THE STATE *v.* JACQUES CHARLOT.

The term *felony* is unknown to the laws of this State.

New trials may be granted in criminal prosecutions.

By the statute of 6 April, 1843, creating the Court of Errors and Appeals, the court is empowered to grant relief against decisions of the inferior tribunals in criminal cases, upon questions confided to their legal discretion. But to enable the court to give such relief, a case must be stated and embodied in the bill of exceptions taken to the decisions below, in order that its correctness or incorrectness may be ascertained, unless the alleged error be apparent on the face of the record.

Where the record of appeal from a judgment in a criminal prosecution, furnishes no means of judging of the relevancy or importance of testimony, on account of the absence of which the prisoner prayed for a continuance which was refused below, the judgment of the lower court will not be interfered with.

In a prosecution for larceny, proof that the offence was committed on the precise day charged in the indictment is unnecessary.

In an indictment for larceny of a cow, a description of the animal by its kind, color and sex is sufficient. The sufficiency of such a description is not affected by any thing in the stat. of 20 March, 1827, relative to the branding of animals in certain parishes.

A new trial will not be granted in any criminal case on the ground of newly discovered evidence, where such evidence is irrelevant or unimportant, or the prisoner must have been aware of its existence before the trial, and was guilty of gross negligence in not procuring it.

APPEAL from the District Court of St. Landry, *Boyce,* J.

*Preston,* Attorney General, for the State.

*Linton* and *Dupré,* for the appellant.

NICHOLLS, J. Previously to entering on the merits of this case two preliminary questions have been raised, on the part of the State, which it is important to dispose of. It is contended on the part of the State, *first,* that it is the decided jurisprudence in England, whence we derive all our doctrines in criminal matters, not to allow new trials in cases of felony, and that the only remedy is by an application to the clemency of the crown ; and, *secondly,* that it is equally well settled law, that a Court of Errors can, in no case, correct or control the decisions of the inferior courts upon questions which the law has confided to their legal discretion.

The term *felony,* although defined and well understood in England, is unknown to the laws of Louisiana. We have no

such grade of offence. In fact, it would be repugnant to the genius and feelings of our people. So in still a *greater* degree would the remedy *there* resorted to for the purpose of protecting the accused from the blasting effects of an erroneous judgment, compelling him to carry to his grave the burning brand of shame and degradation, indebted to the mercy of the executive for the poor privilege of mingling with his fellow citizens, a convicted though pardoned felon, an object of scorn, a leper in a healthy community, despised and shunned by all; owing his liberty, perhaps his life, to the mercy of his government, when he had a right to claim it from her justice. Such would be the condition of the man whose application for justice through the means of a new trial, to which he was entitled, should be overruled in consequence of want of power in the court to grant relief. A people, proud of enjoying the prerogatives of freemen, could not, for an instant, brook such perversion of criminal justice. The granting new trials in *all* cases, is coeval, in Louisiana, with the government; and the proper exercise of this power is one of the safeguards of the people.

The second question, as to the power of this court to grant relief against the decision of an inferior court in regard to the proper or improper exercise of its discretionary powers, is elucidated, on the part of the State, by various decisions of the Supreme Court of the United States, among which is particularly prominent the late case of *Zacharie* v. *Franklin and wife*, reported in 12 Peters, 163. All that is decided in that case is, that a Court of Errors is incompetent to grant relief, from the refusal of the court below to grant a new trial. These various decisions, it is believed, are inapplicable to this court, which is not a Court of Errors *only*. The second section of the act entitled, "An act to establish a Court of Errors and *Appeals* in criminal matters, and for other purposes," thus defines its powers: "This court shall only have appellate jurisdiction, with power to review questions of law; which questions shall be presented by bills of exceptions taken to the opinions of the judge of the lower court, or by the assignment of errors, apparent on the face of the record, taken and made in manner and form, as now provided by law for appeals in civil cases." Questions of law are so frequently dependent upon the testimony, and so mingled with the facts, that it would, in many instances, be difficult to disconnect them. What would be a correct exercise of the legal discretion of the court, upon *one* set of facts, would, on a different hypothesis, where the mass of testimony was of a contrary and different complexion, constitute such a perversion of its legal discretion, as imperiously to require the intervention of this court. Hence the mode adopted in the State

of New York, requiring a case to be made, appears to this court a salutary and wise rule. 7 Wend. 331. Otherwise, in many instances, from the baldness of the bill of exceptions, this court might not be sufficiently enlightened to ascertain with certainty whether the judge had wisely exercised his discretion or not; and it will scarcely be denied, that as much injury may be inflicted upon the accused, by an improper exercise of this discretionary power, as by the erroneous decision of any point of law which may arise during the trial. The discretion confided to the judge is not of that wild, fanciful kind which he can exercise as he pleases. It is a *sound, legal* discretion, which he must exercise in such manner as not to deprive the party accused of any right or privilege guarantied to him by the law. But to enable this court to extend relief, it is evident that a case must be made and embodied in the bill of exceptions, unless apparent upon the face of the record, by which the merits of the decision of the inferior court may be tested. Without this, however erroneous may have been the judgment of the lower court, this court, not having the means of pronouncing *scienter* in the premises, would be obliged to refuse relief.

Having disposed of these introductory questions, the court will proceed to the examination of the affidavit which was filed for a continuance; being the second application for a continuance on account of absent testimony. The affidavit details the nature of the testimony which was expected to be obtained. According to it, this testimony would establish two facts; *first,* that the witnesses were in the habit of visiting at the house of the prisoner and eating at his table; and that on no occasion did they find beef on his table, nor perceive any evidence that a beef or cow had been killed. Now, whether this testimony was relevant or irrelevant, this court is furnished with no means of ascertaining. The indictment charges the prisoner with *stealing,* not with killing the cow of Hebert Doucet; and in the absence of the *indicia,* which might have been afforded by a synopsis of the testimony upon this point, this court cannot say that the testimony was important. As is required in the State of New York, a case should have been made; and *then* the intervention of this court might have been properly invoked.

The second statement in the affidavit is equally untenable, viz. : that the absent witnesses could prove that two of the principal witnesses for the prosecution were not absent from their house, on the day charged in the indictment. The answer to this allegation is, *non constat* but they might still have seen the larceny committed; and moreover, the proof of the *precise* day named in the indictment, is not necessary. This affidavit contains a further statement of an expectation of destroying the credibility

of two of the witnesses sworn upon the trial. The court is satis-
fied with the reasons assigned by the district judge for disregard-
ing it, and thinks that the party was properly ruled to trial.

The last bill of exceptions is founded on the alleged defective
description of the stolen property. The indictment charges the
accused with having stolen one cow of a brown and white color;
one cow of a red and brown color; one cow of a brown, red and
white color, &c., the property of Hebert Doucet. This descrip-
tion is in strict conformity with the English *formulæ* of indict-
ments. Designating the animal by its kind, color and sex, is con-
sidered by the court as amply sufficient. The act of the Legisla-
ture, approved March 20th, 1827, entitled "An Act to create a
central office of brands of animals, in the parishes of St. Landry,
St. Mary, Lafourche and St. Martin," to which the attention of
the lower court was called, does not in the slightest manner af-
fect or impugn the correctness of the opinion delivered by the
District Court; it merely enacts, that a certified copy of the registry
shall be received in evidence, unless attacked for forgery. It does
not profess to alter or amend in any way, the law as it then stood;
and it will scarcely be contended, that because the owner did not
think proper to brand his horses or cows, no larceny could be
committed by taking and carrying them away, and converting
them to the use of the person so taking them.

A motion for a new trial on account of the discovery of new
testimony, was unsuccessfully urged on the court below, and was,
as this court believes, properly overruled. This newly discovered
testimony was expected to be obtained from the evidence of Louis
Bordelon; and consisted in the establishment of the fact that,
either in the month of May or June, 1843, the prisoner sold a cow
to said witness, who branded her with his own brand, after it
had been counter branded by the prisoner. What bearing such
testimony might have had upon the trial, it is impossible for this
court to say. So far as we are enabled to judge, with the lights
before us, it appears irrelevant and unimportant. Besides, if the
statement be true, the prisoner, (having made the sale,) must have
been aware of the fact long before the trial, and was guilty of
gross negligence and *laches*, in not having procured the attend-
ance of the witness before entering on the trial. He had already
obtained one continuance on account of the absence of this very
witness, and was consequently advised of the importance of his
testimony. The application was evidently for delay, and was
properly overruled.

*Judgment affirmed.*