## THE STATE v. HOWELL.

The delivery to the prisoner of a list of persons drawn to serve as jurors, a large proportion of whom had been either previously excused from serving, or were not summoned, or were exempted from serving as jurors, and had made known their causes of exemption, though it contain among the rest the names of all the jurors who are to serve on the prisoner's trial, is not a compliance with the letter or spirit of sec. 35 of the stat. of 4 May, 1805. *Per Curiam:* The object of the statute is to enable the accused to enquire into the characters of the jurors by whom he is to be tried, and to prepare his challenges ; and a list containing other names than those of the jurors really to be presented on the trial, necessarily tends to embarrass the prisoner in preparing his challenges, and thus defeats the ends of the law.

Service on the prisoner of a copy of an indictment, unaccompanied with the finding of the

grand-jury, is not a compliance with sec. 35 of the stat. of 4 May, 1805, which requires that the prisoner shall have a copy of the entire instrument served on him. *Per Curiam*: The finding of the grand-jury must be endorsed on the bill; the endorsement is a part of the indictment, rendering it a complete accusation against the prisoner.

A prisoner does not waive his right under sec. 35 of stat. 4 May, 1805, to have delivered to him a copy of the indictment and list of jurors two days before his trial, by pleading without claiming it.

APPEAL from the First District Court of New Orleans, *McHenry*, J. Elmore, Attorney General, for the State. In England, under the statutes of 7 Wm. III, ch. 23, sec. 1, and 7 Anne, ch. 21, sec. 11, a copy of the indictment has to be served on the prisoner ten days before his arraignment; and if he pleaded without a copy, or to a defective copy, it was considered a waiver of his right to a copy. See 1 East. 111—5. Hawkins, P. C. b. 2, chs. 28, 39, 40. East. P. C. 113. Foster's Crown Law, 227. 1 Chitty, 404—5. *United States* v. *Carter*, 4 Mason, 240—4. *United States* v. *Hare*, note, 2 Wheeler, 304—5. As to the necessity for endorsing the finding of the grand-jury on the back of the indictment, see *Burgess* v. *Commonwealth*, 2 Virginia Cases, 483.

*Preaux* and *Foulhouze*, for the appellant, relied on the stat. of 4 May, 1805, s. 35. The judgment of the court was pronounced by

KING, J. The defendant was indicted for murder, and on his arraignment pleaded not guilty. By law he was entitled to a copy of the indictment, and to a list of the jurors by whom he was to be tried, two days before his trial. After his arraignment, a copy of the indictment was delivered to him, which exhibited no finding of the grand-jury, although certified by the clerk to be correct. He was also served with a list of one hundred and eight names, headed "List of Jurors drawn to serve during the term of June, 1847"; and with a further list of forty-eight names, headed "List of additional jurors drawn to serve during the term of June, 1847." These lists comprised the names of all those who were originally drawn to serve as jurors for the term, and of two additional drawings ordered by the judge, in consequence of the large number who, from various causes, were not in attendance on the court. On the day of trial a third list was delivered to the prisoner, of thirty-six jurors, whom he was informed were to be presented to him, and from whom alone the jury was to be selected. These thirty-six jurors were included in the two lists previously served on the prisoner, and of the several drawings were the only jurors present. The counsel for the accused objected to going to trial, on the ground that the prisoner had not been served with a true list of the jurors—that the lists delivered to him included the names of a number of persons whom the sheriff returned as not found, and of others who had, for sufficient reasons, been excused from serving; which facts were known to the clerk and sheriff before the lists were prepared or served; that these lists were calculated to mislead and confuse the prisoner in preparing his challenges, and violated the satutes. He further objected that he had not been served with a true copy of the indictment. These objections were overruled by the district judge; the prisoner was put upon his trial immediately, was found guilty, and from the judgment of the court has appealed.

The statute, the benefit of which the defendant complains that he has been deprived of, provides that, in certain cases, the prisoner "shall have a copy of the indictment and list of the jury which are to pass on his trial, delivered unto him at least two entire days before he shall be tried." Bul. & Cur. Dig. p. 248, sec. 35. The object of the law in directing a list of the jurors to be

STATE
v.
HOWELL.

furnished to the accused is, to enable him to enquire into the characters of the judges by whom he is to be tried, and to prepare his challenges. The short time allowed him for making this preparation is provided with reference to the limited number of the jury. The prisoner is not left during the brief interval granted for this purpose to prosecute a doubtful enquiry through the community at large into the characters of persons who are not to be presented to him, and for which the time allowed would be wholly inadequate, but may confine himself with more certainty to a small number of jurors, whom he may reasonably expect to be offered to him on the trial. A list containing other names than those of the jurors who are really to be presented on the trial, necessarily tends to embarrass the accused in his searches for information, and to confuse him in preparing his challenges, and thus defeats the ends of the law, Such a list is not a compliance with either the letter or the spirit of the statute, although it may at the same time contain the names of all the jurors who are to pass on the prisoner's trial. The list served on the prisoner in the present instance contained the names of one hundred and fifty-six persons, of whom one hundred and twenty had either been previously excused, or were not summoned, or were exempted by law from serving on juries, and made known their causes of exemption. It was known to the officers of the court at the time that the lists were served, that those one hundred and twenty persons would not be in attendance, or offered to the prisoner at the trial. They were as though they had never been drawn or summoned; and, with equal propriety, the names of any other one hundred and twenty, or greater number, of citizens might have been inserted in the lists.

It is urged that, if this construction be given to the statute, a prisoner whose trial is assigned for the commencement of the term, before it can possibly be known how many of the panel will be in attendance, may decline going to trial if the whole number of jurors contained in the list delivered to him be not in attendance. A just interpretation of the statute does not, in our opinion, lead to this consequence. The inconvenience to which the prisoner may be subjected in the event of the failure of jurors to attend from unforeseen causes, is one to which he must necessarily submit while deriving the benefits of the statute. It is one of those unavoidable evils which no legislative foresight can provide against, but can never be serious, the number of jurors selected at each drawing being limited. The object of the law will be fulfilled, if the prisoner be furnished with a list which is correct at the time of its delivery. Such a list was not furnished in the present instance.

The second objection urged by the appellant, is equally fatal to the regularity of the proceedings in the court below. The finding of the grand-jury must be endorsed on the bill. This endorsement is a part of the indictment, and renders it a complete accusation against the prisoner. Com. Dig. A. 4 Black. Com. 305, 1 Chitty, C. L. 324. A copy which omits this indispensable part of the indictment is imperfect, and is not a copy within the intendment of the act, which contemplates that the prisoder shall have a true copy of the entire instrument.

But it is urged that the prisoner was entitled to the copy before his *arraignment*, and having pleaded without claiming it, he waived the right of insisting on its delivery, and we are referred in support of this position to the uniform interpretation given by the english judges to the statutes of 7 W. III, ch. 3, §1, and 7 Anne, ch. 21, §11, which provide for the delivery to the prisoner *before trial*, in certain cases, of a copy of the indictment and list of jurors. It has been

long settled under those statutes that the prisoner is entitled to the copy *before arraignment*, and that after pleading it is too late to object to the want of a copy or to any insufficiency in it. 1 East. P. C. 123. I Chitty C. P. 405. The act of Congress upon this subject declares: " That any person who shall be accused and indicted of treason, shall have a copy of the indictment and a list of the jury and witnesses to be produced on the trial for proving the said indictment, mentioning the names and places of abode of such witnesses and jurors, delivered unto him at least three entire days *before he shall be tried* for the same ; and in other capital offences he shall have a copy of the indictment and list of the jury two entire days at least *before the trial.* Act of 1790, ch, 9, sec. 29. All that part of our statute which relates to the copy of the indictment and list of the jury, has been taken literally from this act of Congress. In the case of the *United States* v. *Curtis*, a copy of the indictment was served on the prisoner after his arraignment, but more than two days before his trial by the jury. A motion was made for a new trial and an arrest of judgment, on the ground that the copy had not been delivered two days before the arraignment. The question presented involved an enquiry into the meaning of the words which occur in the act of Congress—"before he shall be tried" and "before trial". The statute was compared with those of William and of Anne, and Mr. Justice Story, in an elaborate opinion, in which the whole law on this subject was reviewed, said, that "we are clear in the opinion that upon the statute itself the true meaning is that the copy should be delivered two days before the cause is tried by the jury, and not before the party is arraigned on the indictment ;" and the reasoning upon which he founds his conclusions appears to us unanswerable. He demonstrates clearly that the interpretation given to the words " *before he shall be tried*" in the statutes of W. and A. was forced upon the english courts in consequence of a clause in the first of them, declaring the ebject of the copy to be to enable the prisoner to " advise with counsel thereupon, *to plead, and make his defence*". This avowed purpose of the statute would be defeated unless the prisoner was furnished with the copy before his arraignment, as he is required to plead *instanter* on being arraigned. This explanatory clause which governed the interpretation of the english statutes in relation to the time of delivering the copy does not occur in the act of Congress, nor in the statute of this State. In concluding his remarks on this head Judge Story says: " There is no reason to suppose that the learned (english) judges would have given a different exposition from that which we think the true one of the act of Congress, if the language had been in all respects the same as ours. In point of authority, then, there is nothing binding on the conscience of the court, or that justifies it in abandoning the natural sense of the words used in the act of Congress." P. 244. This authority is conclusive. The prisoner was entitled to a copy of the indictment two days before the trial by the jury, and his right to claim it was not forfeited by pleading before it was delivered.

It is therefore ordered that the judgment of the district court be reversed, and the verdict of the jury set aside. It is further ordered, that the cause be remanded for a new trial according to law.