State vs. Stewart.

No. 11,703.

STATE OF LOUISIANA vs. H. H. STEWART.

It suffices that the defendant was in the custody of the sheriff on the date his appeal is made returnable to this court; the fact of his having previously broken jail being fully answered thereby.

It is not a good objection to an information that it was filed during the pendency of an indictment, under which the defendant was being prosecuted at the time for the same offence.

That there is pending an information or indictment against the defendant for the same offence is no bar to another prosecution under a different indictment or information. There may be several indictments or informations pending in the same court, for the same offence, and against the same defendant. But one conviction or acquittal can be had. Nothing else operates as a bar to further prosecution.

The provision of the Constitution which declares that prosecutions shall be by indictment or information is nothing more than permission to the State to prosecute by either mode at her option, unless she is restrained by statute. And the Constitution permitting either mode of prosecution, the case must stand just in the same attitude in which it would have stood before the lower court, had there been two indictments or two informations against the defendant.

State vs. Stewart.

Proof of the character of the deceased, and of threats communicated to the accused, is inadmissible until a satisfactory basis has been laid by proof of an overt act committed by the deceased; and, in order to constitute an act overt it must consist of a hostile demonstration of such a character as to impress upon the accused the imminency of the danger of loss of life or of great bodily harm.

ON APPLICATION FOR REHEARING.

Under Sec. 992, R. S., the service of a copy of the indictment must be made on the accused by delivering the same to him.
Domiciliary service is insufficient.

*Watkins, J., Dissenting.*—Personal service upon the accused of copy of indictment not necessary.

APPEAL from the Tenth Judicial District Court, Parish of Natchitoches.   *Coco, J.*

*M. J. Cunningham*, Attorney General, and *Phanor Breazeale*, District Attorney, for Plaintiff and Appellee.

*Pierson & Porter* and *W. H. Jack* for Defendant and Appellant.

ON MOTION TO DISMISS APPEAL.

The opinion of the court was delivered by

WATKINS, J. The motion is grounded on the fact that the accused broke jail and became a refugee from justice during the pendency of his appeal, and that this is the equivalent to his abandonment of the same.

This statement is supported by an affidavit of the sheriff bearing date 29th of December, 1894, which is appended to the transcript in connection with the appellee's motion.

But it also appears, from another affidavit of the sheriff subsequently made, that the accused voluntarily surrendered himself into the custody of that officer, and was by him incarcerated within the four walls of the jail on the 31st of December, 1894, the date on which his appeal is made returnable into this court.

That is all the law and the decisions of this court on the subject seem to require, and they appear to afford a complete answer to the motion; and it is therefore denied.

State vs Stewart.

## ON THE MERITS.

The accused appeals from a verdict of a jury finding him guilty of the crime of manslaughter, under which he was sentenced to five years' imprisonment in the penitentiary.

This is the supplement to the case of State vs. Stewart, reported in 45 An. 1164.

In that case the State was appellant from a judgment of the court below sustaining defendant's motion in arrest; and on the trial here that judgment was affirmed and the cause remanded for a new trial—the defendant having been indicted on a charge of murder and convicted of manslaughter.

This *purports* to be the continuation of the same prosecution; at least, it is a prosecution of the same defendant for the same crime—the essential difference between the two prosecutions being that the *former* was by *indictment* and the *latter* is by information.

This alteration in the proceeding from indictment to information, or rather that the prosecution was by *both* indictment and information at one and the same time, is made a question of serious difficulty on this appeal.

As this question is at the threshold of the discussion we will examine it first—for if the defendant's theory should be entertained we could proceed no farther with the case.

As counsel for defendant has stated very clearly the propositions on which they so confidently rely, we will make extracts from their brief in place of making a statement of our own.

They are as follows, viz.:

"1. The information on which he was tried and convicted for the crime of manslaughter was improperly and illegally filed, and, furthermore, under the facts and conditions of the case, the offence therein charged was barred by the statute of limitation before the trial and conviction took place.

"The facts pertinent to this particular inquiry are as follows:

"On the 14th December, 1892, the accused was indicted for the crime of having killed and murdered one Bailey on the 17th day of August of that year. In the month of June following (1893) he was brought to trial on *that* charge; and on the 27th of that month the jury returned a verdict of manslaughter against him. This verdict was set asde by the trial judge on a motion in arrest of judgment, pleading want of legal arraignment.

"Immediately thereupon the District Attorney asked for and obtained an order of appeal. Thereafter, on the 8th day of July, and during the same term of court, the District Attorney filed the present bill of information, charging the accused with manslaughter in the matter of the identical offence for which he had just been tried and convicted. The Supreme Court subsequently affirmed the judgment of the lower court, sustaining the motion in arrest of judgment and remanded the case for further proceedings on the original bill.

"Pursuant to that mandate, in June, 1894, the accused was again brought to trial, on the original bill, for the crime of manslaughter, and the jury failing to agree a mistrial was ordered and entered. Thereafter, as ever theretofore, all proceedings were taken and conducted, under the original bill, until after the commencement of the December term of the court, 1894, when and whereupon the District Attorney, of his own motion, caused the original prosecution to be dismissed, and then, for the first time, was the accused arrested under that bill and straightway ordered to be arraigned and to plead thereto.

"It will be observed, in view of the facts here stated, that the bill of information, so filed on the 8th day of July, 1893, remained dormant and in abeyance for a period of seventeen months, and was called into requisition for the first time *only after* the voluntary dismissal of the original prosecution.

"The filing of this bill, under the circumstances and conditions of the case, was certainly anomalous; and this departure from precedents and practice is made even the more striking by the fact that *all* proceedings were continued under the original bill, as if the information had never been filed.

"That informations may be filed at proper times and in proper cases, either as original charges or to supersede and substitute defective indictments, there can be no question, but when they are filed they are filed as criminal charges, having for their object the arrest and trial of the accused. They are *per se prosecutions* in the eyes of the law and in the very words of the Constitution.

"This bill, as we have seen, was filed after a conviction of the accused by the verdict of a jury for the self-same offence, and after an appeal had been taken by the District Attorney from the judgment of the lower court on a motion in arrest setting aside that verdict. All appeals in criminal cases are suspensive, and therefore the ver-

dict in this case held good until the decision of the lower court was affirmed on appeal.

"It follows from this that this bill of information, *when filed*, did not substitute the charge contained in the bill of indictment, nor was it intended to supersede that charge. The case was no longer properly before the District Court, and long after its filing the Supreme Court, acting upon the matters brought before them on appeal under the bill of indictment, remanded the case under that bill for further proceedings according to law. Moreover, as we have seen, the accused was again brought to trial nearly a year afterward on the original bill, and all proceedings were continued and carried on against him under that bill until it was finally dismissed at the December term, 1894.

"It is clear to our minds that this bill was filed as a future and contingent substitute for the same charge included in the bill of indictment; and as a precautionary method of circumventing prescription, should the original bill for any cause become invalidated. The history of the case is a demonstration of that fact."

From the foregoing we gather the following propositions, viz.:

1. That the information under which the accused was tried and convicted, was illegal and void, because it was filed during the pendency of an indictment for the same offence, and upon which he was thereafter tried and discharged, by reason of a mistrial, and hence he was prosecuted by both indictment and information at the same time, whereas the Constitution prohibits a resort to both of these methods of prosecution at the same time.

2. That the information, filed as it was, long *prior* to discontinuance of the indictment, and no proceeding having been taken thereunder until *after* its discontinuance, same remained dormant, and in abeyance, and not called into operation, or given any legal effect, until seventeen months had elapsed after the date of its filing, and the offence had become extinguished and barred by the statute of limitation.

3. That this information "was filed as a future and contingent substitute for the same charge that is included in the bill of indictment; and as a precautionary method of circumventing prescription should the original bill for any cause become invalidated."

The statement of counsel conforms to the record, though all three of their propositions may be argued as one, because if the informa-

tion was stricken with nullity, for any of the reasons assigned, and did not constitute the basis of a valid prosecution *after* the discontinuance of the indictment, that is the end of the case.

We do not regard the provision of the Constitution that " prosecutions shall be by indictment, *or* information," etc., (Art. 5) as being other than a *permission* to the State to prosecute by either mode, at her option. It had no reference to the *time* either should be filed ; nor was it intended, in our opinion, by the framers of the organic law, to in any manner interfere with or control criminal proceedings. The Constitution permitting *either* method of prosecution, the case must stand just in the same attitude in which it would have stood before the lower court, had there been either two indictments or two informations against the defendant. State vs. Anderson, 30 An. 557.

It is unquestionably correct to say that the filing of an information *after* a prosecution under an indictment has *terminated* does not *revive* the statute, for Wharton says:

" The failure of a defective indictment and the prosecution of a new and correct indictment, after the statute has begun to run, does not revive the statute. The statute, as to the particular offence, was put aside by the commencement of legal proceedings against the defendant and remains silent until those legal proceedings terminate." Wharton Criminal Pleadings and Proceedings, Sec. 325, citing: Commonwealth vs. Sheriff, 3 Brewster, 394; State vs. Johnson, 5 Jones (N. C.), 221; State vs. Hailey, 6 Jones (N. C.), 42; Foster vs. State, 38 Ala. 425.

The same author says further:

" When a party was indicted for murder, but found guilty of manslaughter and the indictment was afterward quashed, the statute of limitations afterward becoming a bar to the indictment for manslaughter, the defendant was discharged." *Id.*, Sec. 446, citing Hart vs. State, 25 Miss. 378.

That is the category to which the argument and pleas of defendant's counsel would assign this case, and the only help the State has in this situation is to be found in the course pursued by the prosecuting attorney—if that is availing.

And again the same author affords relief, for he says:

" It has been ruled that though the defendant has pleaded to a *former* indictment for the same offence, the fact that the former indictment being still pending is no bar to a trial on the second."

*Id.*, Sec. 452, citing United States vs. Herbert, 5 Cranch, 87; Commonwealth vs. Drew, 3 Cranch, 279; Commonwealth vs. Burg, 5 Gray, 93; Commonwealth vs. Fisher, 126 Mass. 265; People vs. Fisher, 14 Wendell, 9; Stewart vs. Commonwealth, 25 Grat. 950; State vs. Nixon, 78 N. C. 538; Dutton vs. State, 2 Ind. 532; Mizza vs. State, 36 Miss. 614.

That author then proceeds thus:

"The better practice, however, is to withdraw the first indictment." Citing People vs. Vanhorne, 8 Barber, 160; Clinton vs. State, 6 Baxter, 507.

" It is in the *discretion* of the court to *quash the former indictment,* which act of quashing constitutes *no bar to further proceedings* on the subsequent bill." Citing Commonwealth vs. Gould, 12 Gray, 171.

An examination of the cases cited fortifies the statement of that author.

In Commonwealth vs. Gould, 12 Gray, 171, the Massachusetts court said:

" But we do not withhold our opinion that after the second indictment was found and returned it was useless to quash the first; for the defendant thereby gained no legal advantage. If the first had been left pending, it could not have been interposed to defeat the second, or to delay the trial of it."

In People vs. Vanhorne, 8 Barbour, 158, the New York court said:

" Whenever two indictments for the same offence, or for the same matter, although charged as distinct offences, are pending, the indictment first found will be deemed superseded by the second indictment, and will be quashed. * * * There are cases where a second indictment would be *proper*, and there are cases, also, where it would be *necessary;* as * * * when the first indictment is defective and a new indictment becomes necessary, before the accused can, with a proper regard for the claims of public justice, be put upon his trial."

In Mizza vs. The State, 36 Miss. 613, the court said:

" Nor can the defendant be prejudiced by any number of indictments against him for similar, or the same offences. One *conviction* for each distinct offence can only be had, and may be plead in bar of any subsequent prosecution therefor."

To similar effect is Commonwealth vs. Burg, 5 Gray, 92.

In Commonwealth vs. Fisher, 126 Mass. 265, it was held:

"At the time of the trial of this complaint, no judgment had been rendered upon the verdict of guilty on the former indictment, and the question whether that verdict should stand was still open, and pending on a bill of exceptions filed by the defendant himself. Under these circumstances, even assuming both prosecutions to be for the same offence, the former verdict will not support the plea of *autrefois convict.*"

In Clinton vs. The State, 6 Baxter, 507, the Tennessee court said:

"When, from any cause, a second indictment is sent against the same parties for the same offence, the second should show that the same disposition had been made of the first by *nolle prosequi* or otherwise; and it should clearly appear, in every such case, upon which indictment the conviction was had. If the indictment is defective, it might be quashed on the application of the prisoner, and a new one substituted."

In State vs. Johnson, 5 Jones, 221, the North Carolina court held the finding of a new indictment for the same offence, varying the terms in which the offence is charged, has the effect " simply to add another count to the bill of indictment; the whole constituted but one proceeding, to be treated as if the bill had at first contained three counts instead of two  *  *  *  and the fact that the counts are all in one bill, or in two bills, both being framed by the same grand jury, makes no kind of difference."

The foregoing authorities seem to be conclusive as to the legality of the information on which the prosecution was based; and in the absence of any pertinent decision of this court to the contrary they would seem to be authoritative, in view of the fact that under our statute "the forms of indictment," "the method of trial," and "all other proceedings whatever in the prosecution of crimes," "shall be according to the common law, unless otherwise provided." Revised Statutes, Sec. 976.

We do not find any contrary principle announced in either of the three cases which are chiefly relied upon by the defendant's counsel.

In State vs. Anderson, 30 An. 557, the court distinctly announces the *same* rule for the interpretation of the constitutional prohibition that is so much relied upon by the defendant's counsel as we have done in the words following:

"Every Constitution of this State has contained the provision that

prosecutions shall be by indictment or information. Our statute restricts the latter to offences not capital, and requires the consent of the court to be first obtained; but that being done—and there is no mode prescribed for obtaining it—the prosecution by information has never been doubted to be of *equal* validity under our law with that of indictment for any offence not capital.''

In State vs. Ross, 14 An. 365, the sole ground of the defendant's motion to quash the information was that the grand jury had, at the same term of court, returned ignored a bill of indictment charging the same offence against the defendant.

The District Judge sustained the motion and quashed the information, but this court reversed the judgment, reinstated the information and remanded the case for a trial thereof.

In the sense of all the authorities, that ruling was correct.

We do not find anything in that case but a mere *obiter dictum* that is at all favorable to the defendant's contention here.

The opinion says:

'' The material question is, whether the District Attorney, at the same term of the court, and on the same day that the grand jury had ignored the *indictment,* could file an *information* after this action of the grand jury?''

It is quite true that with the foregoing quotation is coupled the following, viz.:

'' Article 103 of the Constitution of 1852 provides that ' prosecutions shall be by indictment or information.' The State can select either mode, but can not prosecute by both at the same time.''

It is quite evident that there were not *two* prosecutions of *any* kind pending against the defendant, Ross, for the statement is that the grand jury had *ignored* the indictment, and there was no prosecution upon it. When, subsequently, the information was filed the defendant moved to quash it; *not* on the ground that a previous prosecution by indictment *was pending,* but on the ground that same had been ignored by the grand jury and operated as a *bar to further prosecution.*

Hence, it is our opinion that so much of that decision as relates to the dual prosecution was an *obiter dictum*—being altogether unnecessary to the determination of the *only* question before the court.

In State vs. Vincent, 36 An. 770, the same identical question

again arose, and the court, after referring to the *ignoramus* of the indictment by the grand jury, said:

" After such finding, it is claimed the District Attorney was without authority to file an information for manslaughter, based on the same facts."

Quoting from State vs. Ross the paragraph we have cited, the court concludes thus:

" We know of nothing in our later jurisprudence shaking this doctrine; and, indeed, it rests on reason and very ancient authority. * * * The contrary contention would give to such finding of a grand jury the effect of a valid plea of *autrefois acquit*, of which it does not possess the essential elements.

" The *right of the District Attorney to prosecute for manslaughter by information is not questioned;* and as that form of proceeding reaches the court without the intervention of a grand jury, the *objection to proceeding at the same term*, which would exist to a second proceeding by indictment for the same offence before the same grand jury, *does not arise.*" (Our italics.)

If anything were necessary to confirm our conviction of the Ross case, this opinion would do it.

In any event that *dictum* states an incorrect proposition of law, for either an information—in a proper case—or indictment is the correct means of initiating a prosecution, and through which it may be conducted to a final judgment.

But the *pendency* of *both* at the same time, for the same offence, is no bar to proceedings under *either*—as has been seen. It is of no possible consequence to the accused whether he is prosecuted for manslaughter by means of an indictment or information. It is the acquittal or conviction of the offence that bars further prosecution. Nothing else will.

But counsel's further contention is that notwithstanding the information was *filed* with leave of the court, within the twelve months succeeding the commission of the offence charged, yet, inasmuch as no arrest was made and no proceedings had thereunder, the prosecution remained dormant and without any legal effect, and could not, therefore, be given the force of a legal interruption of the statute of limitation.

That proposition is completely answered by the statement of Mr. Wharton that " it is within the discretion of the court to quash the

*former* indictment, which act of quashing constitutes no bar to further proceedings on the subsequent bill.''

This is not the case of an *illegal* indictment having been quashed *after* the statute had barred the prosecution, and *before* the information had been filed. The information was not, in our opinion, a dormant prosecution in any sense. All the sanctity attaching to any proceeding by information attaches to it, same having been *filed* with the permission of the court and placed among the public archives thereof.

The minute entry appertaining to its filing is as follows, viz.:

'' It is ordered by the court that the information be filed and recorded, and that a bench warrant issue for the arrest of the accused.'' That the accused was not arrested thereunder, and, consequently, not required to make any plea thereto, is not a matter that exercises any influence over its legality or effect.

True it is that this court has held that the withdrawal of a *defective* indictment on the part of the State was a voluntary abandonment of the prosecution which precluded a renewal of it, after the bar of the statute was perfected, by the inauguration of another prosecution. State vs. Baker, 30 An. 1134.

But, in State vs. Curtis, 30 An. 1166, the court said: '' An illegal and void prosecution is equivalent to no prosecution; and under it the accused on the one hand is considered as never having been in jeopardy, while on the other, it is without any legal effect in favor of the State to interrupt prescription.'' State vs. Morrison, 31 An. 211.

But it is not pretended that the indictment on which the District Attorney entered a *nolle prosequi* was defective or illegal. That could not be seriously claimed, in view of the fact that it stood the test of two trials in the lower court and of one in this court.

The District Attorney, in our opinion, assigns a good reason for the *nolle prosequi*, to the effect that the record had grown to so large a size, and the motions and pleas of the defendant had accumulated to so vast a number, that he deemed it expedient to withdraw the prosecution under the indictment, perfectly valid in form, and review it under the pending information, for the purpose of simplifying the issues and disembarrassing the cause of its difficulties.

It seems to us that in so doing he pursued a wise course and exercised a proper discretion.

In the case of State vs. Thomas, 30 An. 301, very nearly contemporaneous with that of State vs. Morrison, this court held that the bar of the statute was ineffectual in case the accused is, under a decree of this court, held in custody to await the finding of a new indictment.

The same rule obtained in Foster vs. The State, 38 Ala. 425.

By a parity of reasoning a like effect attaches to an information *previously filed,* and under which the accused is immediately prosecuted as soon as the indictment is withdrawn.

That the District Attorney thus sought to mend the hold of the State upon the accused, and thus defeat, eventually, the bar of the statute, can not serve as the foundation of any just ground of complaint on the part of the accused. For, at the time the information was filed, the cause was on appeal to this court by the State, seeking to maintain a verdict of conviction against the defendant of manslaughter, and being placed in the impossibility of knowing what would be its fate the District Attorney filed the information as a safeguard against an unfavorable judgment.

And, all the authorities considered, we are of opinion that he was at liberty to take the course he did, and that the information under which he proceeded was legal and valid, and that the effect of its legality reaches back to the date of its filing, and interrupted the bar of the statute of limitation at date of filing.

Our conclusion is that the ruling of the trial judge was correct on both propositions.

The next proposition which is discussed in the defendant's brief, and earnestly pressed in argument at the bar, is, that the copies of the information and the jury list were not served upon the defendant *personally,* two days before the trial, as directed by the Revised Statutes, Sec. 992.

The bill of exceptions relates "that upon the call of this case for trial * * * the prisoner's counsel *suggested* to the court that the prisoner had not had *handed* to him a copy of the information herein, and list of the jurors who are called upon to pass upon his case, two days preceding the call of his case, and read to the court the return of the officer showing domicile service, which is referred to as part hereof."

The judge held that "service of the *venire* and indictment is sufficient when made at domicile. That the intention of the law is that

defendant should be informed of the charge pending against him, and of the jurors who are to pass upon his case. When that information is conveyed to him the ends of justice are met. In this particular instance no suggestion of injury is made. As a matter of fact counsel for defendant had a list of jurors, pending the trial, from which they made their selection of the jurors."

The language of the statute is that "every person who shall be indicted  *  *  *  shall have a copy of the indictment, and the list of the jury which are to pass on his trial, *delivered* to him at least ten days before the trial" (R. S. Sec. 992) ; and the counsel for defendant insists that the meaning of the statute is that there shall be made on the defendant a *personal service* of said copies. And that on account of there being made only a *domiciliary service* thereof, the defendant could not be legally compelled to go to trial.

We have not been referred to any case in which this question has been decided, and we know of none.

The District Judge, in our view, entertained a correct apprehension of the object that is to be attained by that statute; and we can not perceive any necessity for a formal *personal* service on the accused. It matters not in what manner the requisite copies are delivered to the accused. The statute is silent as to the *mode* of service. It is of no consequence what particular means are employed, so that the copies are really and actually delivered to the defendant in due time.

Our impression, derived from the statements we have quoted from the defendant's bill of exceptions, and that is all the guide we have, is, that the abstract legal proposition which is submitted to us for decision is, whether or not domicile service is in any case legal, and also whether the defendant could be legally forced into trial, notwithstanding he had obtained, and was in possession of the necessary copies at the trial, no formal, personal service having been made thereof.

This objection is not well grounded.

The next bill of exceptions taken by the counsel for the defendant relates to the exclusion by the trial judge of evidence of the character of the deceased and of communicated threats.

They insist that the evidence taken at the trial, reduced to writing, and brought up with the transcript, fully proves an overt act of the deceased accompanied by hostile demonstrations, and violence

menaced, quite sufficient in character to justify the admission of the excluded evidence.

The statement of the defendant's bill of exceptions on this subject is "that upon the trial of the case and upon cross-examination of William Colson, a witness in behalf of the State, the prisoner sought to prove the character of the deceased, Osborne Bailey, as to violent temper and dangerous disposition, and also offered to prove *same* facts by (his own) witnesses." Also to prove "that on the evening preceding the killing the deceased had threatened to take the life of the prisoner," and "which threats had been communicated to the prisoner on the morning of the killing," etc. And that "evidence of communicated threats and character of deceased the court excluded on the ground that the proper foundation for the introduction of such evidence was not established."

In the course of stating his reasons for rejecting the proffered evidence the trial judge said:

"Before proof of dangerous character or communicated threats can be offered, it is necessary that defendant show an overt act or a hostile demonstration sufficient in character to give rise to apprehension of imminent danger of sustaining great bodily injury or loss of life on the part of the deceased.

"No such proof being here established to the satisfaction of the court, the testimony is excluded."

The court permitted certain written evidence taken at the trial to be annexed to the bill of exceptions, and as thus annexed same constitutes a part of the bill of exceptions, and consequently constitutes proper subject matter for our consideration.

The contention of defendant's counsel is as follows:

"*The true rule is stated in State vs. Williams, 46 An. 709*, where it is said 'the extent of the overt act which would induce the accused to act in self-defence is *measured* by the character of the deceased for a violent, quarrelsome, dangerous and turbulent disposition, notorious in the community, or known to the accused.'

"The general rule as announced in many cases is that before evidence of communicated threats or dangerous character of the deceased can be offered by the accused, it must appear that at the time of the killing the deceased committed *some overt act, made a hostile demonstration, assaulted or menaced* the accused. State vs. Jackson, 33 An. 1087; State vs. Vines, 34 An. 1078; State vs. Wat-

· son, 36 An. 148; State vs. Birdwell, 36 An. 859; State vs. Janvier, · 37 An. 644; State vs. Vance, 32 An. 1177.

"In these cases there was no well grounded claim that the · slayer was attacked or menaced at the time of the killing. In the cases of the State vs. Garic, 35 An. 970, and State vs. Robertson, 30 An. 340, the correct principle is stated, and in State vs. H. Williams, · 40 An. 168, uncommunicative threats were held admissible in proper · cases 'as throwing light upon the acts of the deceased, and as establishing the reality of the danger under the apprehension of which the defendant may have acted,' and this, although the proof did not · support the prisoner's defence. See also State vs. Cooper, 32 An. 1084; State vs. Ricks, 32 An. 1098."

The quotation counsel make from our opinion in State vs. Williams, 46 An. 708, is not full and complete; so we will supplement it. It is as follows:

"In order to constitute the overt act that would justify the taking of human life, there must be some demonstration made by the de- · ceased of such a character as to impress upon him that he was in imminent danger of his life, or some great bodily harm" (p. 711).

That is, in substance, if not in precise words, the statement of the trial judge in the bill of exceptions.

Then the court adds the following, viz.:

"*In some instances* the extent of the overt act which would induce · the accused to act in self-defence is measured by the character of the deceased for a violent, quarrelsome, dangerous and turbulent · disposition, notorious in the community, or known to the accused."

But it will be observed that this last paragraph is simply an explanatory statement of an exceptional character, not infringing the rule previously formulated. And so very guarded was the court in · stating this exception that the sentence is prefaced with the phrase "in some instances," which counsel failed to observe in making their quotation.

On the main issue—the commission of an overt act by the de- · ceased—we have examined the written testimony in vain for any · proof to that effect. We gather from the evidence that the question in dispute between the defendant and the deceased was in · · reference to the ownership of some timber the former had cut preparatory to making boards, and the latter insisted that the land off · of which the defendant proposed to take the timber was his, and · that the defendant should not remove the same.

State vs. Stewart.

On the day of the homicide the defendant, and one or two persons to assist him in the removal of the timber, repaired to the disputed premises, carrying a wagon for its transportation—having a gun, which he carried across one of his arms.

The deceased, discovering the approach of the defendant and his friends, also repaired to the premises—arriving there first. As soon as the parties were on the ground the dispute was opened by the deceased, who had a large stick in his hand, one end of which was trailing on the ground. In the course of the discussion the defendant and the accused walked twice around the pile of wood— the one having his gun and the other his stick, without any demonstration being made by either.

The defendant picked up a piece of the timber with one hand, holding his gun with the other, and threw it in his wagon. The deceased got into the wagon and threw the timber out, whereupon the defendant ordered him out. This was repeated two or three times, when the defendant fired on the deceased and he jumped out of the wagon and ran a short distance away, and, falling, died soon afterward.

There is no proof of any hostile act or demonstration on the part of the deceased toward the accused which, in our opinion, justified the homicidal act of the defendant, and we are of opinion that the evidence justified the ruling of the judge and his rejection of the proffered evidence.

Having made a thorough examination of all the propositions that were presented in the able and exhaustive briefs of the defendant's counsel, we are fully convinced that no error has been committed which entitles him to relief.

Judgment affirmed.

### ON APPLICATION FOR REHEARING.

McENERY, J.   We have given a patient and earnest attention to the application for a rehearing in this case. In reviewing our opinion we are confirmed in our views on all points in this case, except the service of a copy of the information on the defendant. There was error in the opinion, in stating that the question presented was only an abstract question, without practical results. This error grew out of the form of the bill of exception, as it was not formally and explicitly stated that the defendant had asked for delay for service

of the information, which being denied, he had excepted to the ruling of the court. A close scrutiny of the bill, however, shows that after suggesting to the court that no legal service of a copy of the information had been made on defendant, as required by Sec. 992 of the Revised Statutes, the court ruled that the domicile service was sufficient and ordered the accused to trial over his objection.

The sheriff's return shows that the service was made on the defendant at his domicile, by delivering the copy of information to his wife, apparently over the age of fourteen years, in accordance with the practice in the service of copy of citation and petition in civil cases.

We do not think that this practice can be applied in the service of the indictment in a criminal proceeding. The mode and manner of service is statutory. In civil matters even, no service could be tolerated that was not provided for by positive enactment. In the Code of Practice, Chap. 2, Sec. 3, Art. 187, two modes of service of citation and petition are provided for—by being delivered to the defendant, or, by being left at his domicile. If the Code had only provided for personal service, this court could not have originated domicile service. And our cases all show that in the interpretation of the statutory ways of service, we have in each required a strict observance of the requirements of the Code. "The service is made in person when the citation and petition are delivered to himself." Art. 188, Code of Practice.

Section 992, Revised Statutes, says: "Every person who shall be indicted for any capital crime, or any crime punishable with imprisonment at hard labor for seven years or upward, shall have a copy of the indictment, and the list of the jury which are to pass on his trial, delivered to him at least two entire days before his trial."

This section can admit of no other interpretation than that the copy of the indictment shall be served on the defendant in person. It expressly says that it shall be delivered to him. It does not say that it may be left with some one at his domicile for him. We can not substitute service at the domicile for personal service on the defendant when the law requires the latter. This would, indeed, be judicial legislation. It does not appear that a copy of the indictment or information was delivered to the defendant. Nor does it appear that service of the copy of the information was made on the defendant under the indictment, which was dismissed at the same term of court as was done in case of State vs. Washington, 40 An. 669.

The defendant under the Sec. 992, Revised Statutes, was entitled, as a matter of right, to the service on him in person of the copy of the information two clear days before his trial. He did not waive this right, which was personal. The defendant should have been granted that delay until the requisite service of a copy of the information could have been delivered to him. In this connection a quotation from Blackstone is not inappropriate. "Delays and little inconveniences in the form of justice are the price that all free nations must pay for their liberties in more substantial matters." 4 Blackstone Com. 350.

It is therefore ordered, adjudged and decreed that our former decree be set aside, and it is now ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is further ordered that this case be remanded to be proceeded with according to law.

### DISSENTING OPINION.

WATKINS, J. On reconsidering the question of *service*, I have deliberately arrived at the conclusion that our original opinion is thoroughly correct.

The question raised is counsel's *suggestion*, and it is solely predicated upon the sheriff's return exhibiting domicile service, and nothing more; therefore the question is one of its technical sufficiency as such.

In my view, had the defendant made a *formal* request for a postponement of the trial, on the ground that the requisite copies had not been delivered to him, proof could have been contradictorily administered on that issue, and a judgment on the facts found could have been pronounced.

I regard the statement of the present opinion as proof of this.

Consequently I dissent.

Rehearing refused.