(66 South. 966)

No. 20932.

STATE v. ANDERSON.

(Dec. 14, 1914.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW ⚖➡627 — INDICTMENT — SERVICE—WAIVER OF OBJECTIONS.

Where a defendant in a criminal prosecution has announced his readiness to go to trial, and the impaneling of the jury has so far progressed as that ten jurors have been accepted, his right to object that the indictment (shown to have been served at his domicile) was not served upon him personally must be considered to have been waived, and the objection was properly held to have been made too late.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1399–1408, 1412, 1434; Dec. Dig. ⚖➡627.]

2. JURY ⚖➡72—SELECTION — DISCRETION — TALESMEN.

Under Act No. 182 of 1914, neither the state nor the defendant, in a criminal prosecution, has the right to determine, originally, how many tales jurors shall be summoned for a particular occasion; nor has either the state or the defendant the right to determine how many of those whom the judge has thought proper to order summoned shall be present or reported on before the selection of those needed for the jury may be proceeded with. The matter is left, in the one case as in the other, to the discretion of the judge.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 333–347; Dec. Dig. ⚖➡72.]

3. INDICTMENT AND INFORMATION ⚖➡169, 176—VARIANCE—EVIDENCE ADMISSIBLE.

In ordinary cases, where time is not of the essence of an offense, the evidence thereof need not correspond with the allegation, but may be admitted to show that the offense was committed at any time, whether before or after that alleged, provided it be within the period of prescription. But, where it appears that two offenses, identical in all their features, save as to time, were committed, and a defendant, charged with one, objects to the admission of evidence as to the other, unless and until the indictment be amended to correspond with the facts, including the time sought to be proved, his objection should be sustained; otherwise he may be prosecuted for and convicted of both offenses, though guilty of but one.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 320, 535, 548; Dec. Dig. ⚖➡169, 176.]

Appeal from Twenty-First Judicial District Court, Parish of Iberville; Calvin K. Schwing, Judge.

Arthur Anderson was convicted of burglary in the nighttime with intent to steal, and appeals. Reversed and remanded.

J. H. Pugh, of Plaquemine, and E. N. Pugh, of Donaldsonville, for appellant. R. G. Pleasant, Atty. Gen., and Jacob H. Morrison, Dist. Atty., of New Roads (G. A. Gondran, of Donaldsonville, of counsel), for the State.

MONROE, C. J. Defendant prosecutes this appeal from a conviction of burglary, in the nighttime, with intent to steal, and a sentence of imprisonment at hard labor and fine, and he presents his case to this court by means of certain bills of exception, which will be considered in the order in which they were reserved, to wit:

[1] 1. The indictment was brought in on March 23, 1914, and defendant was arraigned and pleaded on the following day, and the case was then assigned for trial on March 30th, when, "by agreement of counsel," it was reassigned for April 1st, upon which day it was reassigned for April 2d, when defendant moved for a continuance, on the ground that he had not been served with a copy of the indictment, and the motion was sustained. On September 28th, "accused being present in open court and having been arraigned and pleaded not guilty, the case was assigned for Thursday, October 8th." On September 29th, domicile service of copies of the indictment and venire were made on defendant's wife. On October 8th, at defendant's request, and by order of Judge Le Blanc, then presiding, the case was reassigned for October 10th, upon which day it was called for trial by Judge Schwing, then presiding, whereupon defendant objected to going to trial on the ground that the case had been reassigned for trial before Judge Le Blanc, which objection was overruled, for the following reasons (as stated by Judge Schwing), to wit:

"The accused was arraigned and his case was fixed for trial before me. On the day that the case was called up, I was absent, in Pointe Coupee, on official business. A continuance was granted by Judge Le Blanc, and I tried the case on the day fixed."

The impaneling of the jury then began, and, after ten jurors had been accepted, defendant moved for a continuance on the ground that the service of the copy of the indictment had not been personal, which motion was denied, as coming too late.

There was no error in the rulings so made. The court has two judges; the one is as competent to preside in any given case as the other; and this case was not reassigned to be tried by Judge Le Blanc but to be tried by the court.

This court has construed R. S. 992, to mean that the service of the copy of indictment, there provided for, shall be made on the party indicted, personally, and that domiciliary service is insufficient. State v. Stewart, 47 La. Ann. 425, 16 South. 945. It is, however, well settled that the right to such service may be waived, and under the English rule, though not under our law, it has been held to be waived, if not asserted, before the arraignment and plea. State v. Howell, 3 La. Ann. 50. In State v. Guidry, 27 La. Ann. 206, defendant objected to the impaneling of the jury because he had not been served two days before the trial, and the objection was held to have been made in time; and the ruling in State v. Finn, 43 La. Ann. 896, 9 South. 498, was to the same effect. The case now under consideration had once been set down for trial by agreement, and, upon the day upon which it was finally tried, defendant, upon the overruling of his first objection, announced that he was ready for trial, and thereafter participated in the selection of ten jurors before he made the objection that the service of the copy of the indictment had not been personal; there being no pretension that the copy, served at his domicile more than ten days before, had not reached him. We are of opinion that, under the circumstances, the objection must be considered to have been waived and was properly overruled.

[2] 2. It is shown by the next bill that, after ten jurors had been selected, the regular panel was exhausted; that the judge directed the clerk to draw 15 names from the

tales jury box, and directed the sheriff to summon the bearers; that a list of the names was accordingly delivered to the sheriff and a similar list to defendant's counsel, and that the court then took a recess for about two hours and a half, at the expiration of which it reconvened, and the sheriff reported that five of the jurors, whom he had been directed to summon, were in the courtroom, and another elsewhere in the building; that the names upon the list were then called, and five jurors responded; that defendant, through counsel, then objected to proceeding further with the selection of the jurors until the others named on the list should be shown to be present or otherwise accounted for, which objection having been overruled, the bill was reserved.

The statement per curiam, incorporated in the bill, reads as follows:

"Of the 15 tales jurors drawn by the clerk, the sheriff informed me that 4 had removed from the parish. Seven answered to their names when called for examination. The sheriff informed me that he was not in a position to make returns as to the other 4. * * * Only 2 jurors were needed to complete the panel, and the jury was completed from those present. How the accused could have been possibly injured is not apparent."

The purpose of Act 182 of 1914 (amending section 11 of Act 135 of 1898) was undoubtedly to substitute, for the existing method of obtaining tales jurors, under certain conditions, another method, agreeably to which the jury commission is required to select, in addition to the regular venire, 100 tales jurors and place their names in a separate box, from which they are to be drawn when needed, thus taking the matter of their selection, in any particular case, from the control of the sheriff. The statute, however, reads, in part, as follows:

"If on the trial of any criminal case the regular venire is exhausted, or it appears that it will be exhausted, before the selection of the jury therein, the court shall instruct the clerk to open such tales jury box and draw therefrom such number of tales jurors as in its judgment may be necessary to serve on said case, and it shall be the duty of the sheriff to forthwith summon such tales jurors * * * and it shall be the duty of such tales jurors, so summoned, to report immediately, * * * and no tales jurors shall be summoned or be permitted to serve on such jury except as so drawn," etc.

It will be observed that it is within the discretion of the court to determine how many tales jurors shall be ordered upon any particular occasion, and, in determining that question, the judge will, no doubt, consider how many are required to complete the jury that is being impaneled, and how many of the whole number ordered are likely to be found, or found within a reasonable time, since it may very well happen that, of a given number whose names are drawn from the box, none will be found at the parish seat or in the vicinity of the courthouse. We find nothing in the law, or in the reason for the law, from which it can be deduced that where the sheriff is directed to summon 15 tales jurors in order to fill two places upon an otherwise completed jury, and sends his deputies into different parts of the parish to find them, the court is obliged to await the return from the most remote precinct to which a summons has been sent, when enough jurors are present in court to meet the requirements of the case. Of course the sheriff is not to determine which of the 15 whose names are given him he will summon, nor is it to be supposed that the court will permit him to do so, but neither the defendant nor the state has the right to determine originally how many tales jurors shall be summoned for a particular occasion, nor has either the state or the defendant the right to determine how many of those whom the judge has thought proper to direct the sheriff to summon must be present or reported on before the selection of those needed for the jury may be proceeded with. The matter, as we think, is left, in the one case, as in the other, to the discretion of the judge. There was therefore no error in the ruling here complained of.

[3] 3. The indictment alleges that the offense with which it deals was committed on the night of January 22, 1914, but upon the trial, the state offered evidence to the effect that it was committed on the night of January 20th, to which defendant objected on the ground that such evidence was inadmissible, unless and until the indictment should have been amended; and, the objection having been overruled, several bills of exception were reserved in that connection, from which it appears that the prosecuting witness bought a particular bale of moss from one Brown on the evening of January 20th, and stored it in his warehouse; that the same bale was offered to him by and purchased from defendant on the morning of January 21st, and again stored in his warehouse; and that it was again stolen therefrom on the night of January 22d, and, on January 23d, was sold, by a person other than defendant, to one Thielman.

The statement upon the subject by the district attorney, incorporated in bill 5, reads as follows:

"The witness Poché was called to the witness stand, in rebuttal, after the defense had closed its case. And, in order that the court may fully understand the situation presented by this bill, it is necessary that the following facts be placed before the court. In its case in chief, the state placed the witness Poché on the stand, and proved by him that on January 20th the witness had purchased five bales of moss from one Joe Brown; that one of these, so purchased, was baled up in cypress slats, on which there was some coal tar, and was tied with fishing cord; that this manner of baling was somewhat out of the ordinary and gave the bale of moss rather an odd appearance, which impressed the witness at the time; that the witness locked up this particular bale, together with the others, purchased from Brown, in his warehouse, that night; that on the following morning (January 21st) the accused called on witness, at his place of business, and informed witness that he had some moss to sell him; that witness went over to his warehouse to weigh and buy the moss, and that when he reached the warehouse, where accused was awaiting him with the moss, he immediately recognized, in the possession of the accused, the identical bale of moss, baled up as above set forth, which he had purchased from Brown the afternoon previous, and had locked up in his warehouse the night before; that witness said nothing to the accused about recognizing his bale of moss, but bought the moss from the accused and paid him for the same, the bale in question being one of several bales that he bought from accused; that, when accused left the warehouse, the witness proceeded to examine the fastenings on his warehouse, to ascertain, if he could, how the entry had been made into his warehouse the night before, and discovered that the iron staple which secured the lock on the door had been pulled out of the door and pushed back, indicating that the burglar had gotten in the warehouse by pulling out the staple, and had then shoved it back in order to conceal the fact that the warehouse had been entered. The witness then testified that he marked the slats on this bale of moss and again put it in his warehouse, but that, before leaving the premises, he called his partner and a Mr. Mix and showed them the marks on the slats. His purpose in doing this, he said, was to give the burglar an opportunity to steal the moss again, when he would have a better case, if possible, against him.

"With the above testimony, the state closed.

"The defense then called witnesses to prove that, on the morning of January 23d, a negro, not answering to the description of the defendant, sold a bale of moss, baled up in the slats identified by the witness Poché as his slats, to Mr. Thielman, a moss dealer of Plaquemine. This evidence was offered by the defense to prove that some one, other than the defendant, had burglarized Mr. Poché's warehouse. The defense then closed. The state then put Mr. Poché on the stand to prove by him that his warehouse had been burglarized on the night of January 22d also, and that the same bale of moss, together with other moss, had been stolen from his warehouse, but that he had no proof as to the identity of the burglar on the latter night. He testified that he had recovered his slats from Mr. Thielman, but that neither Mr. Thielman nor any of his employés knew the man who had sold Mr. Thielman the moss. They testified that the man who sold Mr. Thielman the moss gave a certain name, but that the name was not Arthur Anderson (defendant's name), nor did he answer the description of the defendant."

Bill No. 7 contains the following recital (quoting in part), to wit:

"That, * * * while the district attorney was making his argument to the jury, he made the following statement:

"That he would not occupy his time in arguing about the case that took place on the 22d of January; that he was only concerned with the case that happened on the 21st [meaning 20th] day of January.

"To which * * * 'defendant * * * objected * * * for the reason that the indictment * * * charged him with breaking and entering * * * on the night of the 22d day of January, 1914, and not on the night of the 21st [meaning 20th] day of January," etc.

Which objection was overruled.

The jury, nevertheless, found defendant "guilty as charged"; that is to say, of the offense alleged to have been committed on the night of January 22d, which presents an anomalous condition of affairs, the more particularly as this court has no jurisdiction to review a verdict and judgment in a criminal case on the ground that the probata does not sustain the allegata, and has so held in a murder case in which it was said that the indictment charged the offense to have been committed in one year, when the evidence showed that it had been committed in another year. State v. Polite, 33 La. Ann. 1016. Mr. Bishop (Bishop's New Cr. Proc. vol. 1, 246) says:

"Sec. 400. In the *ordinary* case, and as the result of the foregoing doctrine, the proof of the offense need not correspond, in day and year, with the allegation. Any day, before or after, within the statute of limitations and before bringing the prosecution will suffice." (Italics by the court.)

And that doctrine has (in the main) been sustained by repeated decisions of this court. State v. Charlot, 8 Rob. 529; State v. Clark, 8 Rob. 533; State v. Agudo, 5 La. Ann. 185; State v. Walters, 16 La. Ann. 401; State v. Kane, 33 La. Ann. 1269; State v. Hardaway, 50 La. Ann. 1348, 24 South. 320; State v. Stover, 111 La. 92, 35 South. 405; State v. Cornelius, 118 La. 146, 42 South. 754; State v. Green, 127 La. 830, 54 South. 45. In State v. Hardaway, supra, where the district attorney had been allowed to amend an indictment for murder, by changing the date upon which the crime was alleged to have been committed, it was said:

"Strictly speaking, the amendment complained of was not necessary, * * * and, if it were, it was permissible."

In the "ordinary" case, as of murder, however, the same offense can be committed but once, whereas, in the case here presented, the same warehouse belonging to the same person

was feloniously entered, and the same property was stolen, upon two occasions, and the defendant, charged with, and convicted of, the one offense, upon evidence relating to both, may yet be prosecuted for, and convicted of, the other, though it is not pretended that he was guilty of both.

Our law (R. S. 1063) declares that:

"No indictment for any offense shall be held insufficient * * * for omitting to state the time at which the offense was committed in any case where time is not of the essence of the offense, nor for stating the time imperfectly, nor for stating the offense to have been committed on a day subsequent to the finding of the indictment, or on an impossible day, or on a day that never happened. * * *

"Sec. 1064. Every objection to any indictment, for any formal defect, apparent on the face thereof, shall be taken by demurrer or motion to quash such indictment, before the jury shall be sworn, and not afterwards; and every court before which any such objection shall be taken, for any formal defect, may, if it be thought necessary, cause the indictment to be forthwith amended in such particular. * * *

"Sec. 1065. In every plea of autrefois convict or autrefois acquit, it shall be sufficient for any defendant to state that he has been lawfully convicted or acquitted (as the case may be) of the said offense charged in the indictment."

"Sec. 1047. Whenever on or before the trial of any indictment for any crime or misdemeanor, there shall appear to be any variance between the statement in the indictment and the evidence offered in proof thereof, * * * it shall be lawful for the court before which the trial shall be had, if it shall consider such variance not material to the merits of the case, and that the defendant cannot be prejudiced thereby in his defense, to order such indictment to be amended according to the proof, both in that part of the indictment where such variance occurs and in every other part of the indictment which it may become necessary to amend; the trial to be had before the same or another jury, as the court shall think reasonable; and after any such amendment the trial shall proceed, whenever the same shall be proceeded with, in the same manner in all respects as if no such variance had occurred or amendments been made. * * *"

In the instant case there was no formal defect apparent on the face of the indictment; but the state, having charged defendant with an offense as committed on the night of January 22d, and which had been committed by some one, on that night, sought to sustain the charge, as thus made, by evidence

showing the commission of a crime, identical with the other, save as to the time, which was committed, by some one, on the night of January 20th, and defendant made the objection that the evidence was inadmissible, unless and until the indictment should be amended to conform to the facts, including the time sought to be proved. There was no other course for him to pursue, and we are of opinion that his objection should have been sustained, and the indictment amended, as contemplated by R. S. 1047, above quoted; otherwise he may be convicted of two offenses, though guilty of but one.

It is therefore ordered that the conviction and sentence appealed from be set aside, and that the case be remanded to be further proceeded with according to law and to the views herein expressed.