HAWTHORNE and McCALEB, JJ., dissent from the refusal to grant a rehearing.

79 So.2d 309

**STATE of Louisiana**

v.

**Electa DORE.**

No. 42134.

Feb. 14, 1955.

Rehearing Denied March 21, 1955.

J. Minos Simon, Sr., Lafayette, for defendant-appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., L. O. Pecot, Dist. Atty., Franklin, Knowles M. Tucker, Asst. Dist. Atty., New Iberia, for appellee.

FOURNET, Chief Justice.

The defendant, Electa Dore, having been charged by indictment with unlawfully committing "the offense of abortion for the purpose of procuring premature delivery of the embryo by the use of an instrument on a pregnant female * * *" in violation of LSA–R.S. 14:87, is appealing from her conviction and sentence to serve three years at hard labor in the State Penitentiary, relying for reversal on numerous bills of exception taken to the rulings of the trial judge. Of the twenty-one bills reserved, six have been abandoned and fifteen are now urged; however, the conclusion we have reached in regard to Bill No. 2, and the subject matter of Bills Nos. 5, 6, 7 and 8, makes unnecessary a consideration of the remainder.

Bill of Exception No. 2 was reserved during the testimony of Dr. Stanford Bevis, Assistant Coroner for Iberia Parish, called by the State as an expert witness, concerning his examination (following a call from the police) of the corpse of a baby lying in the weeds in the back yard of a certain address. In reply to a question by the District Attorney as to whether the body was that of a premature baby, the witness replied: "The baby was definitely premature; I would estimate it was about four or five months," whereupon counsel for the defendant objected to the testimony on the ground that the defendant was accused of the crime of abortion by the premature delivery of an *embryo,* and the State was attempting to prove the commission of abortion by the premature delivery of a *fetus,*[1] contrary to the charge in the indictment. Following overruling of this objection and reservation of the Bill, in subsequent cross-examination of the State's expert medical witnesses, defendant's attorney established that the term "embryo" is applied during the early stages of pregnancy, and the term "fetus" to later stages; and although classifications vary among medical authorities, the embryonic stage is usually considered to extend up to the sixth to the eighth week of gestation, after which the term fetus is applied.

It is elementary that the evidence in a criminal case must correspond with the allegations of the indictment which are essential and material to charge the offense, in order that the requirement may be fulfilled that an accused shall be definitely informed as to the charges against him, and that he may be protected against another prosecution for the same offense. See 27 Am.Jur., Verbo Indictments and Informations, Sec. 177, pp. 722–723; State v. Braxton, 47 La.Ann. 158, 16 So. 745; State v. Anderson, 136 La. 261, 66 So. 966. Proof of premature delivery of a fetus was beyond the allegations of the indictment, and therefore the evidence should not have been permitted.

While the gravamen of the offense is not the stage of the child's development, nor whether instruments or drugs were used, nevertheless the terms "embryo" and "fetus" have different meanings, and the proper procedure in such cases is by amendment to the indictment to conform to the evidence, with postponement of the trial in the discretion of the judge, under LSA–R.S. 15:364, providing that "Whenever, on or before the trial of any indictment, there shall appear to be any variance between the statement in the indictment and the evidence offered in proof thereof * * * *in the name or description of any matter or*

1. LSA–R.S. 14:87 provides: "Abortion is the performance of any of the following acts, for the purpose of procuring premature delivery of the *embryo* or *fetus*: (1) Administration of any drug, potion, or any other substance to a pregnant female; or (2) Use of any instrument or any other means whatsoever on a pregnant female. Whoever commits the crime of abortion shall be imprisoned at hard labor for not less than one nor more than ten years." (Emphasis supplied.)

*thing whatsoever therein named or described;* \* \* \* it shall be lawful for the court before which the trial shall be had, if it shall consider such variance not material to the merits of the case, and that the defendant can not be prejudiced thereby in his defense, to order such indictment *to be amended according to the proof* \* \* \*," and LSA–R.S. 15:253, in pari materia, providing, "\* \* \* If any amendment be made \* \* \* to cure a variance between the indictment and the proof, the accused shall on his motion be entitled to a *discharge of the jury,* \* \* \* and to a *reasonable continuance* of the cause unless it shall clearly appear from the whole proceedings that he has not been misled or prejudiced by the \* \* \* variance in respect to which the amendment is made \* \* \*." (Emphasis supplied.)

Unquestionably if the District Attorney had requested that the indictment be amended to conform to the evidence, it would have been so ordered by the Court; whether the defendant would have been able to show that she was misled and prejudiced by the variance in respect to which the amendment was made, and therefore entitled to a discharge of the jury and a reasonable continuance of the case, is a matter about which we cannot very well conjecture. Suffice to say that the defendant was deprived of a substantial right.

Passing to the subject matter of Bills of Exception Nos. 5, 6, 7 and 8, we think the error there committed was equally fatal

and that the defendant is entitled to a new trial. Bill of Exception No. 5 was reserved when the prosecuting witness was asked the questions: "Did you make any statement to Dr. Finley [Coroner] on that occasion?" and "What did you tell Dr. Finley?" Following the objection and reservation of the Bill, she replied: "I remember telling Dr. Finley, 'I, Dorothy Lopez, went down to Electa Dore's house, 409 West Pershing Street, to cause a miscarriage. She passed a tube into me; that is what caused my miscarriage.' There is only one thing Dr. Finley didn't put, that I had the baby in the pot and had thrown it away." Following this she testified in substance that she signed the statement without reading it, to get away from the courthouse; and that she then "passed out;" but that the facts contained in the statement were true. She was then asked to read the statement, marked S–1 for identification, to which objection was made and a Bill reserved (No. 6). Bill of Exception No. 7 was reserved when the same witness was allowed to testify, over defendant's objection, that in addition to the contents of the written statement she remembered telling Dr. Finley "Where I had the child and in what I had the child." Bill No. 8 was reserved following the overruling of counsel's objection when the District Attorney offered the statement in evidence and indicated his intention to read it to the jury; and he did read the statement to the jury following the judge's ruling.

The written and the verbal extra-judicial statements of a prosecuting witness are merely hearsay, not original evidence, but emanate from a party interested and are never admissible except as res gestae (such as dying declarations in a case of homicide) and for the purpose of refreshing memory. (Marr's Criminal Jurisprudence of Louisiana, 2d Ed., Vol. 2, Sec. 577, p. 887.) Under the express provisions of LSA–R.S. 15:-375, a witness may be allowed to refresh his present memory by examining memoranda, provided that after such inspection he can testify to the fact. But in this case the witness did not use the statement to refresh her memory; in fact, it appears that the witness had a distinct recollection of the contents. The introduction of the statement could, therefore, serve no other purpose than to bolster as an attempted corroboration of the testimony of the prosecuting witness during her examination in chief, and as such was clearly inadmissible. To permit hearsay testimony as part of the affirmative evidence on the part of the prosecution would constitute a radical departure from elementary principles; and the admission of unsworn statements of witnesses, prepared in advance of trial, at the request of one party and without the knowledge of the other party, should be carefully restricted to established rules of evidence. State v. Guillory, 45 La.Ann. 31, 12 So. 314; State v. Menard, 110 La. 1098, 35 So. 360; State v. Hataway, 144 La. 138, 80 So. 227; 58 Am.Juris., Verbo Witnesses, Sec. 580, p.

324. The harm was further aggravated in this case by the fact that the statement was read to the jury by the District Attorney, thus giving added emphasis to its contents by virtue of the force of his personality and the weight of the public office which he occupies. Cf. State v. Borde, 209 La. 905, 25 So.2d 736; State v. Fletcher, 210 La. 409, 27 So.2d 179.

For the reasons assigned, the conviction and sentence of the defendant are annulled and set aside and the case is remanded for a new trial, in accordance with law.

HAMITER, J., concurs in the decree.

SIMON, J., recused.