McCALEB, Chief Justice.
 

 Clarence Malachi Scott was charged, tried and convicted of the crime of abortion, denounced by R.S. 14:87,
 
 [1]
 
 and sentenced’ to serve seven years at hard labor in the state penitentiary. He has appealed, relying on three bills of exceptions reserved below for a reversal of the conviction and sentence.
 

 The first two bills were taken when the trial judge refused to sustain appellant’s motion to quash the bill of information, both being predicated on the alleged unconstitutionality of R.S. 14:87.
 

 Bill of Exceptions No. 1 is divided into two parts. In the first part, it is asserted the information is constitutionally defective in that it does not definitely inform the accused of the nature and cause
 
 *193
 
 of the accusation,
 
 [2]
 
 since it charges him with “the intent of procuring the premature delivery of the embryo
 
 and
 
 fetus,” while these terms have different meanings as recognized in State v. Dore, 227 La. 282, 79 So.2d 309. (Emphasis ours.)
 

 There is no merit to this contention. The information is drawn in the language of the statute and, under Article 480 of the Louisiana Code of Criminal Procedure, “If an offense may be committed by doing one or more of several acts, or by one or more of several means, or with one or more of several intents, or with one or more of several results, two or more of such acts, means, intents, or results
 
 may be charged conjunctively
 
 in a single count of an indictment, or set forth conjunctively in a hill of particulars, and proof of any one of the acts, means, intents, or results so charged or set forth will support a conviction.” When the acts and intent are thus charged, the state cannot be required to elect. State v. Prince, 216 La. 989, 45 So. 2d 366; State v. Rowan, 233 La. 284, 96 So.2d 569. (Emphasis ours.)
 

 Such conjunctive charges of acts and intent are not violative of the constitutional guarantee that the accused be informed of the nature of the charge. Indeed, he is fully informed thereof because the information succinctly states that he intended to procure the premature delivery of the embryo and fetus and proof of either phase of the charge will sustain a conviction. Since the gravamen of the offense is the intent to procure an abortion and the artificial means employed to obtain that end, the accusation conforms with the provisions of Section 10 of Article I of our constitution and the Sixth Amendment to the federal constitution.
 

 Equally without substance is the second part of the first bill, in which it is alleged that the information “seeks to impose criminal liability for the basic crime of abortion upon one who attempts the offense,” in violation of the Fifth and Fourteenth Amendments to the United States Constitution, and Section 2 of Article I of the Louisiana Constitution (due process of law).
 

 In brief counsel acknowledges that under the statute actual delivery or expulsion is not a necessary element of the crime, but he argues that “Since the statute defines the offense, not as causing the premature delivery of the embryo or fetus, but as the performance of an act ‘for the purpose’ of procuring a premature delivery, the statute seeks to impose the maximum punishment upon one who attempts to procure what is universally known as abortion.” In other words, counsel’s argument is, basically, that
 
 *195
 
 because actual delivery is not made a necessary element of the crime of abortion, the legislature failed to follow due process of law
 
 "in drafting the statute.”
 
 (Emphasis ours.)
 

 Counsel cites no authority for such a conclusion. Indeed, unless prohibited by the constitution, the legislature has plenary authority to define what acts or omissions are criminal. Acts drafted by the legislature defining a crime cannot violate the due process clause of the constitution unless they are so grossly arbitrary and unreasonable as to be incompatible with fundamental law. It is for this reason that a statute- which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application is held, in a proper judicial proceeding, to be violative of due process. A legislature' is not otherwise restricted in denouncing as a crime those acts or omissions that constitute it. Counsel does not contend R.S. 14:87 is arbitrary, unreasonable, or so vague as to be unconstitutional.
 

 Patently, the legislature in drafting this statute did not violate constitutional provisions of due process. At common law the offense of “what is universally known as abortion,” as counsel terms it, was primarily against the life of the unborn child; consequently, in order for the offense to be completed, it was necessary to establish that the mother was “quick” with child and that the child show detectable indication of such life by movement within the body of the mother. Under these circumstances, actual miscarriage was a necessary element of the common law offense of abortion. This law,
 
 [3]
 
 and the jurisprudence thereunder, however, is today largely academic, for the law governing abortion in this country is to be found in statutes which prohibit the administration of any drug or the use of any instrument with the intent to thereby produce a miscarriage.
 

 Although a few of these statutes retain some elements of the old common law offénse, unless the statute specifically so provides, the actual miscarriage is not a necessary element of the offense of abortion. The word “abortion” as contained in such statutes does not, of itself, therefore, import a charge of any criminal intent since the gist of the crime is not the expulsion of the fetus or embryo. The gravamen of the offense, and the controlling factor, is the intent with which the artificial means are employed to procure expulsion. This is not an “attempt” to commit “what is universally known as abortion,” as defense
 
 *197
 
 counsel proclaim. It is what the legislature, in its wisdom, has seen fit to denounce as the statutory crime of abortion. See, 1 Am.Jur.2d 188-189, etc., Sections 1, 2, 3, 4, 5 and 13; 1 C.J.S. Abortion §§ 1 through 4, p. 314; 2 Wharton’s Criminal Law and Procedure 551, Sections 737-739.
 

 As observed in Corpus Juris Secundum, “The criminal intent consists in the design to cause an abortion and becomes criminal by reason of the unlawful design for which the drugs or instruments are administered; and when so administered with this unlawful design, the act becomes criminal without the necessity for any other or further intent.” Section 4.
 

 In Bill of Exceptions No. 2, it is asserted that R.S. 14:87 is unconstitutional since it violates the appellant’s rights under the
 
 9th
 

 [4]
 

 and 14th Amendments to the United States Constitution in that it “infringes upon the right of women to choose whether they want to bear children, is overly broad, and impinges upon the freedom to choose in the matter of abortions which has been accorded the status of a fundamental freedom.”
 

 The trial judge in his per curiam to this bill correctly observes:
 

 In the second bill the accused “ * * * alleges some vague constitutional or 'fundamental freedom’ on the part of pregnant women to choose abortion to normal delivery of a child and therefore contends that the Louisiana statute is 'overly broad’ and unconstitutionally penalizes one charged with crime for carrying out the alleged constitutional choice of the women.
 

 “Other than references to public discussions or disputes, defendant cited no authority for this controversial position; and in fact there is none. Similar vague and self-serving arguments were rejected in State v. Pesson, 256 La. 201, 235 So.2d 568; and in State v. Shirley, 256 La. 665, 237 So.2d 676.”
 

 If, as counsel urges, the right of a woman to have an abortion has been accorded the status of a “fundamental freedom,” we can only reiterate the following admonition of this Court in State v. Pesson, supra, where the statute was held to be constitutional :
 

 “Conceding that it might be proper for us to take judicial cognizance of such public opinion, we find that has no bearing on the case presented here. We cannot substitute public opinion and sentiment for the affirmative pronouncements of the legislature, and are of the opinion that the argument is one which should be addressed to the legislature, or, in a specific case, to the pardon board.”
 

 The final bill was also properly disposed of by the trial judge. It was re
 
 *199
 
 served when the doctor attending the victim, following the incident forming the basis of the charge against the appellant was permitted to testify, over defense objection of irrelevancy, with respect to the state of development of the "embryo or fetus allegedly aborted.” Counsel’s contention is that such testimony was prejudicial “to the extent of influencing the jury’s decision against him.” This phase of the case is argued in connection with the first part of Bill of Exceptions No. 1, relative to failure to properly inform the accused of the charge against him.
 

 The transcript of testimony attached to this bill reflects the doctor had stated that when he examined the victim he could hear the “fetal heartbeat.” When the state, seeking clarification, asked the doctor to define the victim’s pregnancy, i. e., whether “it had reached the state of fetus or embryo,” defense counsel objected, stating it was irrelevant to go into these details at this time since the state had previously refused to elect on which theory it would proceed to trial.
 

 We agree with the trial judge that the doctor’s explanation was irrelevant, but harmless to defendant, since the law proscribes the acts alleged and proved, “whatever the state of development of the pregnancy/’
 

 F.or the reasons assigned, the conviction and sentence are affirmed.
 

 [1]
 

 . This statute, as amended by Act 167 of 1964, provides: “Abortion is the performance of any of the following acts, with the intern of procuring premature delivery of the embryo or fetus: (1) Administration of any drug, potion, or any other substance to a female; or (2) Use of any instrument or any other means whatsoever on a female. Whoever commits the crime of abortion shall be imprisoned at hard labor for not less than one nor more than ten years.”
 

 [2]
 

 . In violation of the Sixth Amendment to federal constitution and Section 10 of Article I of the Louisiana constitution.
 

 [3]
 

 . Even the English law on the subject is now governed by the Offenses Against the Person Act of 1861, which makes an attempt to cause a miscarriage by administration of noxious substances, or the unlawful use of instruments, equally a felony.
 

 [4]
 

 . It provides: “The enumeration in the constitution of certain rights, shall not be construed to deny or disparage others retained by the people.”