522 So.2d 616 (1988)
STATE of Louisiana
v.
Jerry D. HUDNALL.
No. KA-7838.
Court of Appeal of Louisiana, Fourth Circuit.
March 3, 1988.
*618 William Guste, Atty. Gen., Darryl W. Bubrig, Sr., Dist. Atty., Pointe-A-La-Hache, Gilbert V. Andry, III, Asst. Dist. Atty., New Orleans, for plaintiff.
Nelson L. Burchfield, Metairie, for defendant.
Before BARRY, ARMSTRONG and PLOTKIN, JJ.
BARRY, Judge.
The defendant was charged with six counts of malfeasance in office. La.R.S. 14:134(2) and (3). He was convicted on all counts and sentenced to concurrent five year terms at hard labor on each count. The sentence was suspended and he was placed on five years active probation pursuant to specified conditions.
The defendant appeals arguing eight assignments of error: (1) and (2) sustaining the State's answer to Paragraph 1 of his application for bill of particulars and denying his motion to quash on vagueness; (3) denial of his motion to quash on grounds of lack of specificity and misjoinder of offenses; (4) permitting Walter Bono, Jr. to testify as to alleged payroll padding which is not within the scope of the information as amplified by the bill of particulars; (5) and (6) denial of his motion for a mistrial based on the State's failure to disclose exculpatory material; (7) denial of his motion for mistrial based on the State's closing argument; (8) imposition of an unusually harsh sentence. The assignments of error (purportedly 12) filed in the district court are not in the record. The defendant listed only the above eight in his brief. Those assignments not briefed or argued are deemed abandoned. Uniform Rules of Courts of Appeal Rule 2-12.4.

FACTS
The defendant was Superintendent of the Plaquemines Parish Belle Chasse ferry. During 1982-1984 he allegedly instructed several parish employees on various occasions to siphon diesel fuel and motor oil from the ferry and transport it in a parish vehicle to his privately owned shrimp boat, and to do repair and maintenance work on his boat during working hours. The defendant did not pay the employees for those services nor was their parish pay reduced by the hours spent on the boat. Six Parish employees who worked under the defendant's supervision in 1982-84, Carrol Freeney, Walter Bono, Vincent DiCarlo, Perry DiCarlo, Wirt Bergeron, and Ben Mistich, testified to the activities. The relief ferry boat captain in 1982-84, Wayne Blair, testified that he made six entries in his log book of incidents of siphoning from the ferry boat's fuel for the defendant's use from July, 1982 to November, 1983 by members of the maintenance crew. Robert Fontenelle, Parish Purchasing Agent, stated the defendant did not reimburse the Parish for the materials or services.
The defense witness, Chad Klees, an employee named in Count 3 of the bill of information, testified that he did work on the defendant's boat, but not during regular working hours. He stated the defendant personally paid him in cash for those services. He knew nothing of others working for the defendant during working hours.

*619 ASSIGNMENTS 1 AND 2
The defendant argues the court erred by sustaining the State's answer to his application for a bill of particulars and denial of his motion to quash. Paragraph I of the particulars requests:
On what date and at what time and place did the defendant allegedly commit the offenses with which he is charged and specifically the dates, times and the particulars regarding quantity on each of the acts contained in the six count bill of information?
The State answered:
All acts occurred in the Belle Chasse area. This was an on-going offense and occurred between August, 1982 and the later part of August, 1984.
The trial court maintained the answer as sufficient and defense objected. Meanwhile, the motion to quash alleged that Counts 3 and 6 of the information were not based on the same act or transaction or part of the scheme of the other counts. Counts 3 and 6 relate to the Parish employees doing repairs and maintenance on the boat during May, 1983 (Count 3) and August, 1983 (Count 6). The other four counts referred to the defendant directing the employees to take fuel for transfer to his boat. In a supplemental motion to quash it was alleged that the bill was vague and failed to specify exact dates, times and places when the offenses occurred. The motions were denied. We denied writs. No. K-4577.
After a hearing on the bill of particulars the defendant orally moved to quash based on vagueness, then followed with a written motion which was denied. His application for writs was denied. No. K-5539. The defendant argues that the amount of fuel should be specified to determine the number of incidents involved. He claims he could not identify each transaction from the information and bill of particulars. We disagree.
Under La. Const. Art. I, § 13 the accused shall be informed of the nature and cause of the accusation against him. La.C.Cr.P. Art. 484 provides for a bill of particulars to inform the defendant of the nature and scope of the offense charged. The defendant should know the scope of the criminal activity so that he can properly defend against the charges. State v. Rogers, 375 So.2d 1304 (La.1979). There is no formula regarding the information the State must make available. The extent to which particulars are granted depends on the nature and complexity of the case. State v. Miller, 319 So.2d 339 (La.1975). The court has wide discretion to determine the sufficiency of the State's answers. Reversible error occurs when there is a failure to provide information on the cause of the accusation. State v. Atkins, 360 So.2d 1341 (La.1978), cert. denied 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979).
Counts 2, 4 and 5 refer to specific quantities of oil and fuel. Count 2 specifies "two fifty-five gallon drums of diesel fuel." Count 4 refers to diesel fuel "between 300 and 500 gallons, and the amount of motor oil was between 50 and 55 gallons." Count 5 specifies "55 gallons of diesel fuel." Count 1 refers to several occasions when Wirt J. Bergeron, Walter Bono and Carrol Freeney were "to take fifty-five gallon drums of diesel fuel" and place it in the defendant's truck along with "four to five gallons of motor oil". Counts 3 and 6 relate to repair and maintenance work by named parish employees which is discussed in assignments 4 and 5. We find the counts set forth the crime charged with specificity.
The defendant also complains of vagueness as to the date of each count, however, that is not an essential element of a malfeasance charge. The date and time of the commission of the offense need not be alleged in the information unless it is essential to the charge. La.C.Cr.P. Art. 468; State v. Glover, 304 So.2d 348 (La.1974); State v. Guin, 444 So.2d 625 (La.App. 3rd Cir.1983). The information must set forth with certainty, clarity and particularity each and every essential element in order to inform the defendant of the nature of the accusation. State v. Fontenot, 256 La. 12, 235 So.2d 75 (1970).
*620 The six count bill clearly sets forth the "who, what and where" of the events constituting malfeasance. Time ranges have been found specific enough to allow a defendant to adequately prepare a defense when he was not surprised by dates withheld by the State and introduced at trial. State v. Cramer, 358 So.2d 1277 (La.1978), writs denied 362 So.2d 581 (La.1978). The employees who testified about when they transported the fuel and serviced the boat did not greatly narrow the time periods in the bill. For the most part they gave dates only generally by months or periods of time in 1982 and 1983. There is no evidence that the State withheld information. These assignments lack merit.

ASSIGNMENTS 3 AND 4
The defendant argues there is misjoinder of counts 1, 2, 4 and 5 relative to the misappropriation of fuel and oil while counts 3 and 6 pertain to public employees working on his boat. That argument was considered in writs K-4577 and K-5539 and rejected.
Under La.C.Cr.P. Art. 493 two or more offenses may be charged in the same information if they are of the same or similar character or based on the same act or transaction or on two or more acts constituting parts of a common plan. State v. Dickinson, 370 So.2d 557 (La.1979); State v. Labostrie, 358 So.2d 1243 (La.1978). These six charges of malfeasance which occurred over a long period of time were clearly connected and properly joined as part of a continuous plan of behavior. See State v. Bland, 419 So.2d 1227 (La.1982).
When a defendant is charged with two or more offenses under Art. 493, the trial court may grant a severance, order separate trials, or provide other relief, if prejudice to the defendant or the State would result. La.C.Cr.P. Art. 495.1. Considerations in determining whether prejudice may occur include whether the jury would be confused by the counts, would be able to segregate the charges and evidence, and not use the counts to infer criminal disposition. The decision is at the trial court's discretion and should not be disturbed absent a showing of abuse. State v. Washington, 386 So.2d 1368 (La.1980).
Assignment 4 relates to allowing Walter Bono's testimony of payroll padding. Walter Bono testified that he and others were sent by the defendant to service his boat during working hours and they brought 55 gallon drums of fuel taken from the ferry boat. Bono said the defendant gave the men extra hours on the payroll for their work on the boat. Defense counsel objected on relevancy grounds arguing that payroll padding is not part of the malfeasance charges.
The State responded that the testimony tends to show criminal intent. To prove malfeasance under La.R.S. 14:134(2) and (3) the State had to prove the defendant was a public officer and that he intentionally performed his duty or permitted any other public employee or official to do so in an unlawful manner. State v. Marshall, 424 So.2d 423 (La.App. 2d Cir.1982), writ denied 428 So.2d 475 (La.1983).
The court sustained the objection as to Counts 1, 2, 4 and 5, but allowed testimony as to Counts 3 and 6. Bono then stated that none of his pay was deducted when he worked on the boat. That was the extent of the questioning allowed on that matter.
The defendant incorrectly argues that proper joinder requires each offense be admissible as part of the res gestae of the other offenses. The six counts were joined as part of a continuous plan and our jurisprudence relating to joinder of offenses of "the same or similar character" is not relevant.
If the charges were considered of similar character, the Supreme Court has held there is no prejudicial effect when the evidence of each offense is simple and distinct, even if the evidence would not have been admissible in separate trials because the evidence of each offense can be kept separate with a proper jury charge. State v. Williams, 418 So.2d 562 (La.1982).
In closing argument the State noted the six separate alleged acts of malfeasance and argued the counts constituted a plan or scheme covering two years. The court *621 properly instructed the jury to consider each count separately and to reach a separate and distinct verdict on each count. There was no prejudicial effect. These assignments lack merit.

ASSIGNMENTS 5 AND 6
By assignment 5 the defendant argues the court erred by denying his motion for mistrial predicated on the State's withholding favorable statements made by prosecution witness Ben Mistich to Mr. Honea, the State's investigator. Assignment 6 makes a similar argument relating to the failure to disclose information from Chad Klees.
Ben Mistich answered affirmatively when asked if he had indicated anything favorable about the defendant to the State's investigator. There was lengthy argument by defense counsel relating to No. 14 of his prayer for oyer which asked for written statements of witnesses which might tend to exonerate the defendant. The State answered that none of its information was exculpatory. Counsel was allowed to question Mistich about his favorable remarks and he recalled stating that the defendant held shrimp boils and always treated his men well. He testified he would not tell that to defense counsel because the investigator told him not to talk to defense counsel. When the defendant claimed surprise the court denied a mistrial.
Suppression by the prosecution of evidence favorable to a defendant violates due process where the evidence is material to either guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963). Evidence favorable to a defendant includes both exculpatory and impeachment evidence. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result would have been different. A reasonable probability must be sufficient to undermine confidence in the outcome. State v. Rosiere, 488 So.2d 965 (La. 1986) citing United States v. Bagley, supra. Bagley rejected the distinction between the different tests for materiality depending upon the type of discovery request and ruled that the standard of materiality was flexible enough to cover cases involving all three types of requests (no request, general request, specific request).
Under Louisiana law the prosecution is not required to furnish statements made to the District Attorney or to provide unlimited discovery. La.C.Cr.P. Art. 723. However, the defendant may not be denied exculpatory statements made by a witness other than the accused if the statement is material and relevant to the issue of guilt or punishment. State v. Ates, 418 So.2d 1326 (La.1982).
The "favorable" remarks by Mistich are not exculpatory or impeachment evidence, nor are they material or relevant. The State was not required to provide that information.
As to Assignment 6, Chad Klees (named in Count 3 as one of the Parish employees directed by the defendant to do repair and maintenance work on the boat) spoke to the State's investigator by telephone.
The defendant argues it is logical that Honea prepared a written record of his interviews with the witnesses which should fall under Paragraph 14 of his prayer for oyer. Otherwise, he contends Paragraph XII of his bill of particulars asking for the name and address of any person giving an unwritten statement of evidence favorable to the defendant would cover the situation. The State's answer to both requests was that the information in its possession was not exculpatory.
Klees was called by the defense and testified that he told Honea by telephone that he had never worked on the defendant's boat during working hours or taken diesel from the ferry. Klees said he worked on the boat after hours and on weekends and the defendant paid him. He knew nothing about the activities of other parish employees. Prior to trial he met with the Assistant District Attorney and was asked the same questions.
Counsel argued surprise and noted that he subpoenaed Klees after he learned the
*622 State had released him. If Klees' statements are considered exculpatory, they tend to refute one part of one count of the bill of information. The defendant could have called Klees or any other employee who did not participate in the scheme. Such testimony has probative value, as would that of any other employee, but it does not negate the overwhelming specific proof of malfeasance.
These assignments lack merit.

ASSIGNMENT 7
The defendant argues that it was error to deny his motion for mistrial and the court should have admonished the jury when the Assistant District Attorney injected personal information into his closing argument. Defense counsel continually attempted to elicit from the State's witnesses that Honea told them not to speak to counsel, but only Ben Mistich so stated. The rest denied the allegation. During summation the Assistant District Attorney said:
I heard Mr. Honea's name brought in here so many times I was beginning to wonder if I was in the right trial. He works for the District Attorney's Office, and he was an investigator, and there are these allusions and these innuendos and these allegations saying that he threatened them and forced them to do this and he forced them to say that. Any every one of them denied that on the witness stand. That is not the issue in this case. It is not whether that happened, or did not happen. I deny it vehemently. It didn't happen. You heard from everyone to that effect.
Defense counsel objected, moved for a mistrial, but did not request an admonition pursuant to La.C.Cr.P. Art. 771.
Argument is confined to the evidence or the lack thereof or to the conclusion of fact one may draw therefrom and to applicable law. La.C.Cr.P. Art. 774. The defendant argues the State misrepresented the evidence by his comment. Since the testimony related to whether the State's investigator had influenced the witnesses, the comment was the Assistant District Attorney's conclusion (although perhaps not thoroughly correct.) as to what had been established and he could argue his view arising out of the evidence. See State v. Moore, 432 So.2d 209 (La.1983), cert. denied 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed. 2d 367 (1983).
If the remark is considered improper, we find no reversible error because we are not convinced the jury was influenced by the remark. See State v. Bretz, 394 So.2d 245 (La.1981), cert. denied 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981). This assignment lacks merit.

ASSIGNMENT 8
The defendant argues that his sentence was illegal and excessive. He was found guilty on all six counts of malfeasance and sentenced on each count to five years at hard labor, the sentences to run concurrently. The sentences were suspended and he was placed on five years active probation. The conditions of probation are:
(1) Defendant serve two (2) years in Plaquemines Parish Prison, Parish prison, Parish prison sentence is made executory on January 2, 1987, at 9:30 A.M.
(2) Defendant make restitution to the Plaquemines Parish Commission Council in the sum of $2,778.03.
(3) Defendant is to reimburse the Plaquemines Parish Commission Council the sum of $2,509.60 for Court costs incurred in this matter.
(4) Defendant is to reimburse the Criminal Court Fund the sum of $575.00, paid to Dr. John Knox, for examining defendant and testifying in this matter.
(5) Defendant is to reimburse the Plaquemines Parish Commission Council in the sum of $182.00 for ambulance service.
(6) Defendant is to contribute the sum of $2,500.00 to the Indigent Defender Board.
Defendant is to pay all fines, costs and monetary assessments on or before February 2, 1990, payable through the Sheriff's Office.
Under La.R.S. 14:134 the maximum sentence is five years on each count. Additionally, *623 as a condition of probation he is to serve two years in Parish prison, the maximum permitted under La.C.Cr.P. Art. 895(B). The combined period of incarceration (2 plus 5 years) exceeds the maximum sentence (should probation be revoked) allowed by statute and is therefore illegal. State v. Wagner, 410 So.2d 1089 (La.1982); State v. Newell, 497 So.2d 4 (La.App. 4th Cir.1986); State v. Jones, 477 So.2d 914 (La.App. 4th Cir.1985). The sentence must be set aside.
We have reviewed the record for other errors patent and there are none.
The conviction is affirmed. The sentence is vacated and the case remanded for resentencing.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.
PLOTKIN, J., concurs.
PLOTKIN, Judge, concurring.
I concur with the majority's conclusion. In order to avoid further error and delay, the trial court is reminded to indicate what aggravating and mitigating circumstances were considered in sentencing the defendant as required by La.C.Cr.P. art. 894.1 State v. Davis, 449 So.2d 452 (La.1984). This was omitted at the original sentencing hearing.