544 So.2d 1209 (1989)
STATE of Louisiana, Plaintiff-Appellee,
v.
Charles M. JONES, Defendant-Appellant.
No. CR88-863.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1989.
Rehearing Denied July 10, 1989.
*1212 John Scott, Alexandria, for defendant-appellant.
Thomas Yeager, Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
Before GUIDRY, DOUCET and LABORDE, JJ.
DOUCET, Judge.
On January 29, 1987, appellant, Charles Jones, was indicted by a grand jury for illegal possession of stolen things, a violation of La.R.S. 14:69. On February 19, 1988, appellant was found guilty as charged by a six person jury. Imposition of sentence was suspended pursuant to La. C.Cr.P. art. 893 and appellant was placed on two years supervised probation. As a condition of probation, appellant was ordered to pay $500 restitution to the City of Alexandria. Additionally, appellant was fined $1,000. Appellant seeks review of his conviction based on eighteen assignments of error.
FACTS
In early February 1986, appellant, Charles Jones, encountered Daniel Vanasselburg in the second floor hallway of Alexandria City Hall. At the time, appellant was employed in the city personnel office and Vanasselburg was working in data processing on the city's computer system. Appellant informed Vanasselburg that "he had problems with his utility bill" and asked for "help." Partially motivated by a desire to gain influence with appellant in *1213 employing a second data processor and justifying his actions by thinking appellant may have a legitimate problem with his bill, Vanasselburg entered a $500 credit to the outstanding balance on appellant's account. He did so some two weeks after the hallway meeting. Two days later, Vanasselburg informed appellant of the $500 credit and warned appellant not to contact the utility department about the entry. At trial, Vanasselburg confirmed appellant neither requested the credit nor did he specify an amount.
In early February 1986, the city employed Ronald Langford as assistant director in the collections office of the city utility department. In reviewing delinquent accounts, Langford discovered that the utility records indicated appellant was approximately $1,400 in arrears on his account. Langford repeatedly approached appellant concerning satisfying the debt by full payment or by a repayment contract. Appellant had entered a similar arrangement in May 1984 when his account was $614.61 in arrears and informed Langford an agreement was already in effect. Langford considered the earlier contract breached and continued efforts for payment or formation of a new contract.
On March 26, 1986, Langford reviewed computer records to determine the status of appellant's account. These records signified payment credits of $151.61 on January 13, $363.11 on February 17, and $500 on February 24. Because the third credit did not contain a computer code for the employee receiving the payment, Langford decided to investigate the matter. After two employees were unable to discover evidence of a payment from a search of billing stubs and cash register receipts, Langford approached Vanasselburg about the computer reference. Vanasselburg agreed to look into the matter and stated he would report to Langford in a week. When Langford inquired into the matter the following week, Vanasselburg was unable to explain the credit and suggested Langford ask appellant about it. Vanasselburg called appellant and informed him Langford was enroute to his office to confront him about the situation. Vanasselburg suggested appellant tell Langford a $500 cash payment had been made. Langford approached appellant in his office and again sought to establish a revised repayment agreement. Appellant suggested Langford check his computer because three payments had recently been made including a $500 cash payment. Although appellant insisted he had a receipt, and despite repeated requests for such proof of payment, appellant was unable to produce a receipt to correspond with the $500 computer entry. In April 1986, Vanasselburg met appellant in the hall and informed appellant he was leaving his position. Appellant remarked that "he guessed he'd have to start paying his utility bill."
ASSIGNMENTS OF ERROR NOS. 1, 2, 3, 8, and 17:
By these assignments of error, appellant contends the trial court erred by permitting the district attorney to amend the original indictment twice before trial, and because the trial court allowed these amendments, it erred in denying defendant's motion in arrest of judgment. Appellant insists the amendments constitute substantive modifications to the charges which entitled appellant to a continuance. Appellant also argues that the filing of an "Amended Bill of Information" which modified charges in the indictment restored appellant's right to a preliminary examination.
Appellant was originally indicted by a grand jury on January 29, 1987. The indictment alleged "that he on or about the 24th day of February 1986 intentionally received stolen things, to-wit, a $500.00 credit on his utility account with the City of Alexandria, Louisiana, which had been the subject of a theft by David VanAsselburg [sic] who improperly and unlawfully credited his account without proper payment being received...." On February 27, 1987, defense counsel filed a written motion for a preliminary examination. The court denied the motion because appellant had been indicted by a grand jury.
On February 10, 1988, the prosecutor amended the charges by alleging the date was "on or about and between the 24th day *1214 of February and the 30th day of April 1986." On February 17, 1988, the date of trial, the allegations were further amended by specifying the applicable sentencing section of 14:69. In both instances, the district attorney entitled the documents "Amended Bill of Information."
The district attorney has complete authority to amend indictments, both as to form and substance, at any time before trial. La.C.Cr.P. art. 487; State v. Guin, 444 So.2d 625 (La.App. 3rd Cir.1983). The amendments in the instant case were made one week before trial and on the morning of trial prior to jury selection, respectively. Therefore, whether the amendments were substantive or formal, they were proper.
Upon defense motion and a showing that the amendment has prejudiced the accused in his defense on the merits, the trial judge shall grant a continuance. La.C. Cr.P. art. 489. The purpose behind the continuance is to protect the accused against prejudicial surprise which could result from an amendment. State v. Brown, 338 So.2d 686 (La.1976). The trial court has broad discretion in deciding whether to grant a continuance and his ruling will not be disturbed unless he arbitrarily and unreasonably abuses that discretion. State v. Davis, 385 So.2d 193 (La.1980).
Appellant maintains that the initial amendment expanded the time span within which the crime was alleged to have been committed by nine weeks. On these grounds, defense counsel asserts surprise and the necessity of additional time for preparation of a defense as to the appellant's activities on the new dates.
Contrary to appellant's representations, the record does not demonstrate a motion to continue was raised prior to trial. Instead, the minutes exhibit an objection to the filing of the amendment. Appellant has no right to argue error in the court's failure to grant a continuance if no such motion was made. La.C.Cr.P. art. 841. Assuming such a motion was made, there appears to be no prejudice by the amendment or failure to grant a continuance. It is clear defense counsel had prior access to a statement made by Vanasselburg concerning the circumstances of the unauthorized entry and activity following the entry. Defense counsel extensively used this statement in defense of the charges and in cross-examination of Vanasselburg. Under the circumstances, the amendment expanding the time frame within which illegal activity was alleged to have been committed did not constitute prejudicial surprise mandating a continuance.
Appellant's claim that the filing of the "Amended Bill of Information" restored appellant's constitutional right to a preliminary hearing has no merit. The preliminary exam is designed to ensure that probable cause exists to hold an accused in custody. The existence of probable cause is conclusively presumed once a valid indictment is returned by a grand jury. State v. Holmes, 388 So.2d 722 (La.1980); State v. Johnson, 529 So.2d 466 (La.App. 1st Cir.1988). After an indictment, the judge is fully justified in denying a motion for preliminary examination but may order such an examination in his sound discretion. On appeal after conviction, a defendant can no longer allege improper denial of a preliminary examination. State v. Johnson, supra.
The grand jury indictment in the instant case constituted a finding of probable cause to hold appellant for trial on the charges. The amendment enlarging the time period in which the criminal activity occurred does not necessitate an additional probable cause determination. The effect of the indictment remained in force even though the prosecution entitled his motion an "Amended Bill of Information." Furthermore, a convicted defendant may not allege error in denial of a preliminary examination on appeal. The trial judge did not err in failing to order a preliminary examination upon amendment of the indictment.
Also, since the amendments to the indictment were proper, the trial court was not in error in denying defendant's motion in arrest of judgment based on the trial court's allowing these amendments.
*1215 For the reasons stated, these assignments of error have no merit.
ASSIGNMENT OF ERROR NO. 4:
By this assignment of error, appellant urges that the trial court erred in denying his motion to quash for failure of the prosecution to advise appellant he was a target of the grand jury and that he had the right to counsel. Additionally, appellant alleges that the state's failure to answer the bill of particulars mandated quashing of the indictment.
La.C.Cr.P. 433(A)(2) states:
"An attorney for a target of the grand jury's investigation may be present during the testimony of said target. The attorney shall be prohibited from objecting, addressing or arguing before the grand jury; however he may consult with his client at anytime. The court shall remove such attorney for violation of these conditions. If a witness becomes a target because of his testimony, the legal advisor to the grand jury shall inform him of his right to counsel and cease questioning until such witness has obtained counsel or voluntarily and intelligently waived his right to counsel. Any evidence or testimony obtained under the provisions of this Subparagraph from a witness who later becomes a target shall not be admissable [sic] in a proceeding against him."
Prior to his grand jury testimony, appellant was informed he was "possibly a target" and "could possibly be charged with a crime." The prosecutor advised appellant of his right to remain silent and the right to have counsel present during his testimony. Appellant was presented with and signed a "Waiver of Legal Rights" form listing these and other rights prior to testifying.
Appellant's assertion that the prosecutor's failure to use less ambiguous language represents noncompliance with art. 433(A)(2) and mandates quashing of the indictment is baseless. A reading of the record demonstrates the prosecutor clearly informed appellant that criminal charges were contemplated based on activities about which appellant was called to testify. Appellant was adequately advised of his right not to testify and his right to the presence of defense counsel prior to testifying. The trial judge correctly ruled this asserted error did not justify quashing the indictment.
An accused is entitled to be adequately notified of the nature and cause of the accusation against him. State v. Woljar, 477 So.2d 80 (La.1985); La. Const. Art. I § 13. Therefore, an information must contain the essential facts of the offense charged. State v. Gainey, 376 So.2d 1240 (La.1979). The purpose of the bill of particulars is to more fully inform the accused of the nature and scope of the charge against him so that he will be able to properly defend himself and avoid any possibility of being charged a second time with the same criminal conduct. State v. Wells, 429 So.2d 502 (La.App. 3d Cir.1983), writ denied 437 So.2d 1136 (La.1983). The bill of particulars may not be used to obtain the state's evidence. State v. Stevenson, 514 So.2d 651 (La.App. 2nd Cir.1987), writ denied 519 So.2d 141 (La.1988).
In the instant case, the indictment together with the amendments specified the offense alleged to have been committed, the manner in which it was committed, the subject and perpetrator of the theft, and the range of dates in which the crime was committed. The particular allegations in the amended indictment adequately informed appellant of the nature of the charges against him and were responsive to many inquiries in the bill of particulars. Other information sought in the bill of particulars was either more appropriately sought under discovery (i.e., requests for inculpatory statements) or constituted specific requests to obtain the state's evidence.
The necessity for a bill of particulars arises only in those cases where greater specification of the charge is necessary for the accused to properly prepare his defense. In re Buquet, 184 So.2d 288 (La.App. 1st Cir.1966), writ denied 249 La. 198, 186 So.2d 159 (1966). Additionally, any obligation existing under La.C.Cr.P. art. 484 is fulfilled if the prosecutor opens *1216 his entire file for inspection by defense counsel. State v. Ohrberg, 448 So.2d 1316 (La.App. 1st Cir.1984). In the instant case, the prosecutor informed the trial court and represents in his brief that his entire file had been made available to defense counsel. Therefore, the specificity of allegations in the amended indictment and the availability of the state's file enabled defense counsel to identify the alleged criminal activities and to prepare a defense. For these reasons, the trial judge properly denied appellant's motion to quash.
This assignment of error has no merit.
ASSIGNMENT OF ERROR NO. 5:
By this assignment of error, appellant argues the trial court erred in failing to grant defense motion for answers to the bill of particulars.
On February 27, 1987, defense counsel filed a motion for bill of particulars. The motion contained a prayer that "in default of state's voluntary compliance with requests made in this motion, that it be set for a hearing and that the State of Louisiana, represented by the said District Attorney, be ordered to show cause at a time and place fixed by the Court why the particulars and the information requested by defendant herein should not be furnished to him." Pursuant to this motion, the court ordered an April 1, 1987 hearing. No written answers were filed by the prosecution. The recorded minutes show that no hearing was held on the appointed date nor did defense counsel take action suggesting dissatisfaction with the form or substance of the state's response. A supplemental bill of particulars was filed to which the state provided written responses. Although the motion set the matter for hearing "in default of compliance," the record demonstrates no hearing was held. These factors, together with defense counsel's access to the statement of Vanasselburg, support the prosecutor's assertion that open file discovery was provided.
For the reasons stated in the previous assignment of error, it does not appear that the state breached any obligation in failing to respond to the bill of particulars. Additionally, defense counsel took no action prior to trial to inform the trial judge of dissatisfaction with the form or substance of the state's response. Therefore, there appears to be no adverse trial court ruling from which appellant may seek review. La.C.Cr.P. art. 841.
For the reasons stated, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 10:
By this assignment of error, appellant asserts that the trial court erred in admitting into evidence inculpatory statements made by appellant where the state failed to provide written notice pursuant to La.C.Cr.P. art. 768. At trial, the court admitted, over defense objection, statements made by appellant to Langford and Vanasselburg. In the first, Langford testified that appellant informed him that a $500.00 cash payment had been made on appellant's utility account and that appellant had a receipt for the payment. The second contested statement occurred during the testimony of Vanasselburg. Vanasselburg testified that upon learning of his resignation and imminent departure, appellant stated he would have to start paying his utility bill.
La.C.Cr.P. art. 768 provides:
Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
The purpose of the notice is to avoid surprise and to allow fair opportunity to plan or present a defense in light of the damaging statement. State v. Billiot, 421 So.2d 864 (La.1982). An "inculpatory statement" within the meaning of the article refers to an out of court admission of incriminating facts made by the defendant after the crime has been committed. An incriminating statement is one which admits a fact tending to establish guilt, or from which guilt may be inferred. State v. Bodley, 394 So.2d 584 (La.1981). No notice is required *1217 for the state to introduce into evidence a statement which is exculpatory. State v. Whitaker, 489 So.2d 998 (La.App. 1st Cir.1986), writ denied 494 So.2d 324 (La.1986). When substantial compliance with the purpose of art. 768 has been achieved through other pre-trial actions, the failure of the prosecution to give notice will not bar introduction of the statement. Improper introduction of inculpatory statements mandates reversal only if the accused is prejudiced by failure to disclose. State v. Grant, 517 So.2d 1151 (La.App. 5th Cir.1987).
In the instant case, the initial statement made to Langford was an assertion that the computer credit accurately depicted a cash payment for which appellant possessed a receipt. The veracity of the statement was disproved by other evidence which established no such payment had been received. The fact that the statement proved damaging does not mean it was inculpatory within the context of art. 768. Instead, this statement was exculpatory in nature and no notice was required. See State v. Bodley, supra.
As to the second statement made to Vanasselburg prior to his departure from the city, it is apparent by defense counsel's repeated use of Vanasselburg's earlier statement that appellant was provided with pre-trial discovery concerning the expected substance of his testimony. Defense counsel's access to this statement operated to avoid surprise and to allow fair opportunity to plan and present a defense. Therefore, the trial court did not err in allowing introduction of the statement despite the state's failure to file written notice.
Finally, appellant's claim that the statements had no relevancy to the charge in the indictment is baseless. The first statement tends to show an active attempt by appellant to conceal the fact that a credit was received without payment. The latter would tend to establish appellant's guilty knowledge that the credit received was unauthorized. As these statements might tend to show the commission of the offense, the trial judge did not abuse his discretion in ruling the statements relevant. State v. West, 419 So.2d 868 (La. 1982); State v. Freeman, 447 So.2d 1145 (La.App. 3rd Cir.1984), writ denied 449 So.2d 1356 (La.1984).
For the reasons stated, this assignment of error is without merit.
ASSIGNMENTS OF ERROR NOS. 6, 7, AND 12:
By these assignments of error, appellant argues the trial court erred in failing to grant a motion to quash on the grounds that the allegations do not charge a criminal offense. Appellant also contends the state's failure to specify that receipt occurred on a date separate from the theft is fatally defective. Appellant maintains that the trial court erroneously permitted introduction of evidence beyond the scope of the accusations in the indictment.
The motion to quash is essentially a means by which the accused may raise pre-trial pleas of defense, i.e., those matters which do not go to the merits of the charge. It has been equated to an exception of no cause of action in a civil suit. In considering a motion to quash, a court must accept as true the facts contained in the bill of information and in the bill of particulars, and determine as a matter of law and from the face of the pleadings, whether a crime has been charged. Questions of factual guilt or innocence to the charge may not be raised by motion to quash. State v. Perez, 464 So.2d 737 (La. 1985).
Appellant essentially argues there was a valid defense to the indictment as written in that no property was stolen because the city had control over the computer program and could delete the unauthorized credit. Appellant also claims no evidence existed of a "receipt" of stolen property when no tangible object was placed in appellant's possession. These issues are factual matters, the determination of which goes to the merits of the state's case. Therefore, the motion to quash was properly denied as to these arguments.
Appellant also argues the indictment form used is defective for failing to allege *1218 appellant "knew or had good reason to believe that the thing" was stolen and for failing to specify dates on which the theft and the illegal receipt occurred.
As previously discussed, the indictment sufficiently identified the conduct charged and the statute violated. The indictment specifies the "who, what and where" of the events constituting illegal possession of stolen property. The failure to include a verbatim extract of the statutory language should not be defective where the language makes clear the offense charged and the manner in which the offense was charged. See, State v. Pounds, 522 So.2d 1119 (La.App. 1st Cir. 1988), writ granted on other grounds 526 So.2d 789 (La.1988) (where failure to specify position defendant held not fatally defective in charges of public bribery). Although the amended indictment expanded the applicable time period to a span of nine weeks, this is not defective if the range allows defendant to adequately prepare a defense and there is no surprise by dates withheld by the state and introduced at trial. State v. Hudnall, 522 So.2d 616 (La.App. 4th Cir.1988), writ denied 530 So.2d 83 (La.1988). The date and time of the offense in the instant case were not essential to the charge. The inclusion of this information in the indictment was not mandated. La.C.Cr.P. art. 468. The nature of the charges and the fraudulent conduct of the parties involved prevented any greater specificity as to dates than was alleged in the indictment. There is no evidence the state was aware of specific dates and withheld the information. There is no merit to these claims.
Finally, appellant argues error was committed when the trial judge permitted introduction of evidence beyond the scope of the indictment which alleged appellant intentionally "received" stolen property. The possession of stolen things under certain enumerated circumstances is proscribed as criminal under La.R.S. 14:69. Illegal possession can be established by proof that the accused intentionally possessed, procured, received or concealed a thing which was the subject of the theft. In accusing appellant of "receiving" stolen property, the district attorney opted not to use conjunctive charging pursuant to La.C.Cr.P. art. 480. Evidence presented at trial must correspond to allegations in the indictment. State v. Dore, 227 La. 282, 79 So.2d 309 (1955).
In the instant case, defense counsel repeatedly objected to introduction of evidence demonstrating appellant's possession, procurement or concealment of the unauthorized credit. The grounds for objection were that this evidence was beyond the scope of the allegation in the indictment that appellant "received" stolen property. Appellant's position that a criminal defendant cannot be convicted for criminal activity not included in an indictment is accurate. However, the prosecution has the right and duty to present all evidence relevant to the charge. Any evidence which tends to show commission of the offense is admissible. State v. Freeman, supra. Although possibly beyond the scope of the indictment, evidence that appellant possessed or procured the unauthorized credit tends to show "receipt." More importantly, any evidence demonstrating appellant's attempts to conceal the credit tends to prove appellant knew the credit provided on his account was unauthorized, and tends to show intentional receipt.
For the reasons stated, these assignments of error are without merit.
ASSIGNMENTS OF ERROR NOS. 9 AND 16:
By these assignments of error, appellant asserts that the trial judge committed reversible error by admitting into evidence the business records of the city utility office. Appellant argues the evidence presented in laying the foundation for introduction of the records demonstrates these records to be so unreliable that the trial court abused its discretion in permitting their admission into evidence. Appellant also asserts the district attorney made a prejudicial remark concerning appellant's character after a state witness had testified to appellant's good reputation in the community.
*1219 Except where specified by law, hearsay evidence is inadmissible. La.R.S. 15:434. Although there is no statutory formulation of a Louisiana business records exception, the existence of such an exception to the hearsay rule has long been recognized by Louisiana courts. State v. Vessell, 450 So.2d 938 (La.1984); State v. Monroe, 345 So.2d 1185 (La.1977). Generally, before the exception may be invoked by the state against the defendant allowing introduction of a permanent record made in the ordinary course of business from personal knowledge of the facts recorded, or from information furnished by one having a business duty to observe and report the facts, it must be shown that the person who made the record is genuinely unavailable for testimony, that he had no strong motive to misrepresent, and that in all probability the evidence is trustworthy. State v. Vessell, supra at 944. In cases of data stored on computers, the general rule is adjusted to allow introduction without producing the individuals who entered the data if 1) the computer equipment is recognized as standard, 2) the entries are made in the regular course of business, and 3) the foundation satisfies the trial court that the source of information, method and time of preparation were such as to indicate trustworthiness. State v. Armstead, 432 So.2d 837 (La.1983). The trial judge has great discretion in determining the sufficiency of the foundation which is necessary for the introduction of evidence. State v. Cobb, 419 So.2d 1237 (La.1982).
Appellant bases his assertion of the unreliability of the utility department records and computer printouts on statements by state witnesses that the utility collections were in disarray during the summer of 1985 when a new computer system was installed. However, the testimony makes clear that the computer problems did not affect the accuracy of the data but the manner in which it was stored in a program. The "problems" with the system did not affect the accuracy of the reported balance on appellant's accounts. These records were maintained in the regular course of business. Although a witness did testify that appellant's account may have included improper penalties, the trial court ruled the system was sufficiently trustworthy to permit testimony concerning the balance on specific dates. The purpose of admitting the amount due was to demonstrate appellant owed a substantial balance at the time of the unauthorized credit. Even assuming improper penalties had been included in the balance due, the record would support the state's allegation that a substantial sum was owed on the date of the credit. Defense counsel was given full opportunity and effectively contested the reported balance due. Under the circumstances, we cannot say that the trial judge abused his discretion in ruling that the city utility records were sufficiently trustworthy to be introduced into evidence.
Finally, appellant's contention that the prosecutor made a prejudicial comment within hearing of the jury is not supported by the record. Appellant acknowledges the absence of such a comment in the transcript but maintains that, after a state witness testified to appellant's positive reputation in the community, the prosecutor said, "Let me up there and I'll tell you what people think of Mr. Jones." Even if such a comment was made, the failure of defense counsel to timely object prevents raising the issue on appeal. La.C.Cr.P. art. 841.
For the reasons stated, these assignments of error are without merit.
ASSIGNMENT OF ERROR NO. 14:
Appellant contends the trial judge erred in ruling that a letter from an auditing firm declaring the city's accounting system to be in disarray was inadmissible hearsay. Appellant argues this "credit management letter" was part of the city's utility records and admissible.
During the testimony of a defense witness, defense counsel sought to introduce an accounting firm letter which, appellant asserts, "criticized in detail and declared the disarray of the utility accounts, the accounting system, the lack of controls, the laxity, the customer account errors and discrepancies and the general unreliability of the utility records of the City of Alexandria." *1220 Although the trial court ruled the letter to be inadmissible hearsay, the witness was allowed to testify that the firm declined to enter an "audit opinion" on the records of the utility system. The witness explained the reasons for this decision were "problems" with the system. More importantly, during the cross examination of a state's witness, defense counsel read extensively from the report and emphasized those aspects critical of the city's utility system.
Even assuming a letter from an auditing firm retained by the city constitutes the business records of the city, an erroneous ruling declining to admit the letter into evidence would be harmless because the contents of the letter were previously made known to the jurors. Improper exclusion of evidence constitutes reversible error only where there is a reasonable probability that exclusion might have contributed to the verdict. State v. Martin, 458 So.2d 454 (La.1984). Considering the fact that the audit management letter would merely be cumulative to the testimony of both a state and a defense witness and that the contents of the letter were read to the jury, any erroneous exclusion is harmless beyond a reasonable doubt.
Therefore, this assignment of error has no merit.
ASSIGNMENTS OF ERROR NOS. 11 AND 18:
By these assignments of error appellant alleges the trial court erroneously refused to give eight jury instructions requested by defense counsel. Appellant also argues the trial court's final charge erroneously informed the jury that appellant could be found guilty if the state proved he possessed, procured or concealed a stolen thing when the indictment charged appellant with receiving stolen things.
The trial judge is obligated to charge the jury as to the law applicable to the case. A requested special charge shall be given by the court if it does not require qualification, limitation or explanation and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given. La.C.Cr.P. art. 807; State v. Pettaway, 450 So.2d 1345 (La.App. 2nd Cir. 1984), writ denied 456 So.2d 171 (La.1984); State v. Smith, 414 So.2d 1237 (La.1982). When properly requested, the judge must charge the jury as to any theory of defense which the jurors could reasonably infer from the evidence and which is supported by the evidence. State v. Johnson, 438 So.2d 1091 (La.1983); State v. Marse, 365 So.2d 1319 (La.1978). Failure to give a requested charge constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. State v. Pettaway, supra; State v. Marse, supra.
Initially, it should be stated that although the trial court read the full language of the statute when discussing the crime charged, he expressly informed the jury to find appellant guilty only if the jurors found appellant "intentionally received anything of value which was the subject of a robbery or theft under circumstances which indicate that the defendant knew, or had good reason to believe, that the thing, in this case a credit to his utility bill in the sum of $500.00, was the subject of a theft or robbery." It is clear that the trial court's instruction did not allow appellant to be convicted for activities beyond the scope of the indictment.
In the other jury instructions, the trial court informed the jurors of the general law regarding specific intent, burden of proof, reasonable doubt, evaluating witness testimony, direct and circumstantial evidence, and the privilege against self-incrimination. The eight defense instructions rejected by the trial court can be briefly summarized as follows:
i) defendant can be convicted for the crime only if he knew the property was stolen at the time of receipt;
ii) receipt requires either physical possession or dominion and control of the thing;
iii-v) definitions from Black's Law Dictionary of "receive," "intentional" and "theft";
*1221 vi) essential elements of the crime of theft with appellant's knowledge of the theft prior to receiving the item constituting an essential element of the charged offense;
vii) if accused was rightfully entitled to a portion of the credit, acquittal is required;
viii) if Vanasselburg had actual or implied consent of the city to alter utility bills, there is no theft and appellant should be acquitted.
As to the first requested jury charge, it is apparent that a person who is unaware that property received is stolen at the time of receipt may nonetheless be found guilty if he retains possession of a thing after becoming aware the thing was subject of a theft. La.R.S. 14:69(C); In re Emerson, 250 So.2d 439 (La.App. 4th Cir. 1971). Therefore, this requested instruction was not wholly accurate and the trial court did not err in rejecting the request.
The second through sixth requested instructions which were denied were either incomplete, included within the substance of instructions provided, or would have required explanation. In such situations the instructions would have confused the jury and the judge properly denied the requests.
The seventh requested instruction denied by the court seeks to establish a defense that a person who is entitled to a partial credit on his utility bill is justified in receiving an unauthorized credit as a remedy. The fact that an individual is entitled to a payment from another party does not justify the individual in taking property from that party without his consent. Not surprisingly, there is no case law cited to support appellant's proposition. Therefore, the trial judge properly rejected this requested instruction.
The final requested charge rejected by the trial court was not wholly pertinent and correct. The fact that the city may have failed to effectively supervise employees who made unauthorized credits to consumer accounts should not be deemed as a consent to such unauthorized taking. Furthermore, testimony at trial makes clear that Vanasselburg was acting beyond the scope of his duties in entering the credit to appellant's account. Therefore, this theory of defense was neither supported by, nor could it be reasonably inferred, from the evidence.
For the reasons stated above, the trial judge did not err in rejecting appellant's requested jury instructions and these assignments of error are without merit.
ASSIGNMENTS OF ERROR NOS. 13 AND 15:
By these assignments of error, appellant contends the trial court erred in denying defense motion for a directed verdict at the close of the state's case. Appellant also argues the evidence presented at trial was insufficient to prove guilt beyond a reasonable doubt of the crime charged. Appellant reiterates his position that in order to be convicted under La.R.S. 14:69, the accused must be aware that the property is stolen at the time of receipt. Furthermore, appellant argues he never received or acquired possession of the utility credit and that the credit was not the subject of a theft because the city could at any time remove the unauthorized credit from his records.
During a jury trial the accused is not entitled to move for a directed verdict. La.C.Cr.P. art. 778; State v. Allen, 440 So.2d 1330 (La.1983). Therefore, the trial judge properly denied the defense motion for a directed verdict. Defense counsel also filed motions for arrest of judgment and for a new trial. The merits of the errors alleged in these motions are discussed and rejected in this opinion. Under such circumstances, there is no error in the denial of these motions. State v. Sneed, 328 So.2d 126 (La.1976).
The standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The essential elements of the instant *1222 offense are: 1) that defendant intentionally received the property; 2) that the thing was the subject of a robbery or theft; 3) that the thing was of value; and 4) that the defendant knew or should have known that the property was the subject of a robbery or theft. State v. St. Romain, 505 So.2d 223 (La.App. 3rd Cir.1987), writ denied 508 So.2d 86 (La.1987).
In the instant case, it is clear the utility credit granted by Vanasselburg was the subject of a theft. Vanasselburg had no authority to credit appellant's account and through his acts demonstrated an intent to deprive the city of the $500 represented by the computer credit entry. The fact that the city, as victim of this theft, has an avenue by which to secure return of the unauthorized credit should not be interpreted to mean that there could be no theft of the $500 credit, nor should it detract from the culpability of those who sought to deprive the city of the funds represented by the credit.
The value of the thing stolen is self-evident in the instant case. An individual owing substantial funds for a utility bill is enriched by the amount of any unauthorized credit granted. To the same extent, the utility company is deprived of those funds credited to an individual's account.
Also, the state established receipt of the property in the instant case by showing the unauthorized credit was entered into the computer. At that point, appellant possessed the benefits of the credit. When appellant was informed two days later that the credit had been entered, was instructed not to call the utility office, and took no further action, there was an intentional receipt of the benefits of the unauthorized credit. Although the thing received (i.e., the benefit of not having to pay the city the $500 represented by the credit) is intangible, it is apparent from La.R.S. 14:67 and R.S. 14:2(2) that such incorporeals may be the subject of a theft and can be received and possessed.
Finally, guilty knowledge by the appellant can be established by proof that appellant knew or should have known the thing was stolen. The individual who has good reason to believe the thing was stolen is prevented from asserting naivete as a defense. State v. St. Romain, supra. When Vanasselburg informed appellant not to question the utility office about the credit and later warned appellant that he should inform Langford that a cash payment of $500 had been made, appellant knew or should have known under the circumstances that the credit granted by Vanasselburg was unauthorized. Appellant's repeated insistence that he possessed a receipt suggests an attempt at concealing the fact he had wrongfully received the benefits represented by the credit. Finally, appellant's comment to Vanasselburg that he would have to renew payments to the city upon Vanasselburg's departure, leads to an inference that appellant knowingly and wrongfully received an unauthorized credit of $500.
Therefore, any rational trier of fact, viewing the evidence in a light most favorable to the prosecution, would find that all the essential elements of the crime of illegal possession of a stolen thing were proven beyond a reasonable doubt. These assignments are therefore without merit.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against appellant.
AFFIRMED.